**RAINEY–MAPES, Southern Maritime Underwriters, Inc., Colony Insurance Co., et al., Appellants,**

v.

**QUEEN CHARTERS, INC., William G. Gordon and Estate of Theodore G. Schmidt, Appellees.**

No. 04–85–00424–CV.

Court of Appeals of Texas, San Antonio.

March 25, 1987.

Rehearing Denied May 26, 1987.

Patricia D. Chamblin, Beaumont, Thomas S. Hoekstra, Ross S. Crossland, San Antonio, Brian R. Davis, Austin, Jane E. Bockus, San Antonio, for appellants.

George H. Spencer, Jr., San Antonio, Marion E. McDaniel, Jr., Houston, for appellees.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

This case involves appeals and cross-appeals arising from the non-payment of an insurance claim. William Gordon, president of Queen Charters, Inc., individually and as co-principal with Queen Charters, Inc. contracted to purchase a sailboat from the Estate of Theodore Schmidt (Schmidt) intervenor/appellant/cross-appellee. The boat, valued at $150,000.00, was purchased for $100,000.00. Gordon and Queen Charters (Gordon/Queen Charters) plaintiffs/appellants/cross-appellees, paid $5,000.00 down payment on the boat, and executed a promissory note to Schmidt for the balance of $95,000.00. The sales agreement required the buyers to maintain insurance on the vessel, which protected Schmidt as the loss payee.

Gordon contacted the Sanger & Altgelt Insurance Agency (Sanger) defendant/appellant/cross-appellee to procure the required insurance. Sanger, acting as an agent for Gordon/Queen Charters, contacted Rainey-Mapes, defendant/appellant/cross-appellee, an insurance broker, to obtain the insurance as Sanger does not normally handle maritime insurance. Rainey-Mapes contacted Southern Maritime Underwriters Limited who in turn contacted the Colony Insurance Company. Colony ultimately issued the insurance policy to Gordon/Queen Charters. Southern and Colony were defendants in the trial below, but are not involved in this appeal.

Gordon/Queen Charters closed the sale of the vessel with Schmidt on February 25, 1983. Prior to the closing, Gordon/Queen Charters contacted Sanger concerning the insurance policy issued by Colony and inquired whether there were any territorial restrictions. Gordon/Queen Charters received an insurance binder on February 18, 1983, prepared by Sanger which stated that the insurance coverage would take effect on February 25, 1983. The binder did not contain any territorial exclusions.

At the closing, Gordon/Queen Charters and Schmidt talked via telephone with Susan Johnson, an employee of Sanger, who told them that coverage was in effect for Gordon/Queen Charters' contemplated voyage from St. Thomas, V.I. (where the closing took place) to Galveston, Texas. No mention of territorial exclusions was made and the parties understood that Johnson had the policy in hand at the time of the conversation.

Sanger received the actual insurance policy on March 1, 1983. Gordon departed from St. Thomas on March 2, 1983. While en route, the sailboat struck a reef off the coast of the Dominican Republic and sank. Gordon notified Sanger of the loss. Sanger in turn contacted Rainey-Mapes. Rainey-Mapes informed Sanger that the policy excluded coverage while the vessel was in the waters of the Dominican Republic, and that, therefore, Gordon/Queen Charters'

loss was not covered. Colony ultimately denied coverage based upon this territorial exclusion.

Sanger, Gordon and Queen Charters filed suit against Rainey-Mapes, Colony and Southern alleging actions for breach of the insurance contract, for violations of the Texas Insurance Code and under the Texas Deceptive Trade Practices Act. Schmidt intervened seeking to recover on the $95,000.00 note executed by Gordon/Queen Charters. Schmidt also sought to recover punitive damages from Sanger, as a third party beneficiary of the insurance policy, for misrepresentations concerning insurance coverage on the sailboat and for Sanger's failure to obtain coverage without territorial restrictions. Rainey-Mapes filed a cross-action against Sanger, Southern and Colony seeking indemnity or contribution.

The trial court realigned the parties positioning Gordon and Queen Charters as plaintiffs and Southern, Colony, Rainey-Mapes and Sanger as the defendants. Sanger then filed cross-actions against the other defendants for contribution or indemnity.

In response to special issues, the jury found that Sanger made misrepresentations to Schmidt concerning the terms of the insurance policy which had been issued, and that such misrepresentations were a producing cause of Schmidt's damages. The jury also found that Rainey-Mapes made misrepresentations to Gordon/Queen Charters, and that Rainey-Mapes' conduct was a producing cause of Gordon/Queen Charters' damages. Negligence in procuring an insurance policy free of territorial exclusions was attributed 40% to Sanger and 60% to Rainey-Mapes.

A final judgment was entered on April 22, 1985. The trial court granted Schmidt a directed verdict against Gordon/Queen Charters on the note plus interest and attorneys fees. Judgment was rendered in favor of Gordon and Queen Charters and against Rainey-Mapes in the amount of $55,000.00. Additionally, judgment was

rendered in favor of Schmidt and against Sanger for $95,000.00. These amounts were doubled pursuant to the Texas Insurance Code. As the jury found that 30% of the misrepresentations concerning the policy terms were attributable to Rainey-Mapes and 70% to Sanger, attorneys fees were awarded to Gordon/Queen Charters and Schmidt.

Rainey-Mapes, as appellant, asserts in its first three points of error that, because Gordon/Queen Charters assigned its cause of action to Sanger, there was no party before the court for whom judgment against Rainey-Mapes, could be entered. It further argues that permitting Gordon/Queen Charters to recover against Rainey-Mapes results in indemnifying or contributing to Sanger on its liability in that Sanger would enforce its assignment by proceeding against Gordon/Queen Charters upon Rainey-Mapes' payment of the judgment. Alternatively, Rainey-Mapes alleges that Sanger's settlement with Gordon/Queen Charters was a compromise which extinguished Gordon/Queen Charters' cause of action or that the cause of action is defeated by the greater liability on Sanger's part.

The assignment or agreement was not admitted into evidence, although Rainey-Mapes did offer it twice. The trial court did, however, permit questions concerning the agreement. During cross-examination of Gordon by Colony, the following colloquy occurred concerning the agreement:

Q.: You didn't sue Sanger Altgelt, did you?

A.: I didn't.

Q.: All right. And, in fact, you reached an agreement with them, didn't you, prior to coming in here to trial?

A.: Yes, I did.

Q.: In fact, you reached an agreement whereby they agreed to pay you a certain amount of money, didn't they?

A.: I guess you can say that under certain conditions.

Q.: And they agreed to pay for all of your attorney's fees, didn't they?

A.: I think that is include (sic) in the agreement.

Q.: And didn't they stipulate in that agreement that they misrepresented the terms of the policy to you?

[Objection.]

Q.: And under the terms of this agreement, sir, you assigned your claim to them, didn't you?

A.: I think that would be correct, yeah.

Q.: Didn't you agree to cooperate with them in the prosecution of their claim?

A.: I did.

Q.: And didn't they agree to hold you harmless from any expenses involved in asserting and prosecuting this claim?

\*    \*    \*    \*    \*    \*

A.: That is what it says, yes.

A bill of exceptions was perfected, wherein Rainey-Mapes attempted to offer the agreement into evidence. Joe Haynes, Sanger's managing partner, testified that Sanger had entered into an agreement with Queen Charters and that Sanger anticipated paying something towards the legal fees owed to Gordon and Queen Charters' attorneys. Haynes testified before the jury that the agreement was to make Gordon "whole regardless of what happens."

As the agreement is not included in the record, we cannot examine its provisions. The testimony adduced at trial does not sufficiently detail the terms of the agreement so as to permit us to ascertain whether Gordon/Queen Charters assigned their entire cause of action to Sanger or only a portion of it, or whether the agreement was a settlement between Sanger and Gordon/Queen Charters.

The testimony at trial established only that there was an agreement between Sanger and Gordon/Queen Charters, that Sanger agreed to pay Gordon/Queen Charters' attorneys fees, that "the claim" was assigned to Sanger, that Sanger agreed to hold Gordon/Queen Charters harmless for any expenses involved in asserting "the claim," and that Sanger agreed to make

Gordon whole regardless of further court action. No details as to the claim or the perimeters of the assignment were presented. Thus, we must ignore the existence of the assignment and treat evidence concerning the agreement as irrelevant to the issues before us.

The plaintiffs' petition identifies Sanger, Gordon and Queen Charters as the plaintiffs and does not indicate that Sanger brought suit as an assignee of Gordon/Queen Charters. Although Sanger was realigned as a defendant, Gordon/Queen Charters did not assert a cause of action against Sanger.

Assignments may be whole or partial transfers of the assignor's claim. *Campbell v. Hildebrandt*, 68 Tex. 22, 3 S.W. 243 (1887).

The plaintiffs herein alleged entitlement to damages for a breach of the insurance contract, violations of the Deceptive Trade Practices Act, violations of Section 21.21 of Insurance Code, and damages to their business reputation. However, because the assignment is not before us, we cannot determine which, if any, of these claims was the claim allegedly assigned to Sanger.

Rainey-Mapes did not contest Gordon/Queen Charters' or Sanger's standing to bring suit prior to trial. Although Rainey-Mapes contends in its brief that the standing issue was raised on the eve of trial, no indication that such occurred appears in the record. Testimony elicited during trial concerning the assignment did not purport to raise the issue of standing either, but rather was offered in an attempt to show the terms of the assignment.

Although Rainey-Mapes attempted to introduce the assignment to show a lack of standing, there are no pleadings to raise or support such a contention. TEX.R.CIV.P. 94 requires that defenses including accord and satisfaction or other matters constituting an avoidance or affirmative defense be specifically raised in responsive pleadings. Rule 93 further requires that a pleading alleging that a plaintiff is not entitled to

recover in the capacity in which he sues must be verified by affidavit.

Neither affirmative pleading nor verification appear in Rainey-Mapes' pleadings. No mention of the parties' lack of standing was made by Rainey-Mapes until it filed a Motion to Disregard Special Issues and Motion for Judgment.

Rainey-Mapes argues that there is a difference between an allegation of lack of capacity to sue and lack of standing, and cites us to the case of *Develo-Cepts, Inc. v. City of Galveston*, 668 S.W.2d 790 (Tex. App.—Houston [14th Dist.] 1984, no writ), to support its assertion that a challenge to capacity to sue is cureable by amendment while a challenge to standing is not. We agree with the Houston court that there is a difference. However, in the case before us, the issue is capacity and not standing.

Rainey-Mapes argues that Sanger was without standing because it failed to sue as an assignee of Gordon/Queen Charters. If Sanger indeed was suing as an assignee but failed to so identify itself, such would have been cureable by an opportunity to amend to plead its true capacity. Similarly, Gordon/Queen Charters may have been suing on its own claim other than as an assignor of all its claims to Sanger, or in a representative capacity on behalf of Sanger. This capacity, too, could be shown by amendment to pleadings, and thus was a cureable defect, if in fact Gordon/Queen Charters assigned its cause of action to Sanger.

A lack of capacity to sue must be raised prior to trial. However, as noted, Rainey-Mapes did not raise such prior to trial. As there is no evidence before us, such as the purported assignment, from which we can determine that Gordon/Queen Charters or Sanger was not entitled to bring suit or lacked standing because suit was not brought in the proper capacity, we presume that such capacity existed. Rainey-Mapes' first point of error alleging a lack of standing is overruled.

In points of error two and three, Rainey-Mapes points out the indemnifying effect

on Sanger of a judgment for Gordon/Queen Charters against Rainey-Mapes. Rainey-Mapes contends that the trial court denied all defendants indemnification or contribution from each other. It then argues that payment by them of the judgment in favor of Gordon/Queen Charters would indemnify Sanger because under the terms of the assignment Gordon/Queen Charters must pay any money recovered to Sanger. Thus, it is argued that Sanger would be indemnified notwithstanding the trial court's denial of such if Rainey-Mapes complies with the judgment.

■ As previously noted the assignment agreement is not before us, hence we cannot determine what obligations Gordon/Queen Charters has concerning payment to Sanger. Therefore, we do not consider the potential effects of the judgment which are not directly involved in this suit. Based upon the evidence before us and the judgment entered, Sanger has not been awarded indemnification or contribution. Points of error two and three are overruled.

In its fourth point of error, Rainey-Mapes contends that the court erred in submitting special issues and then failing to disregard the jury's answers to these special issues concerning misrepresentations made by Rainey-Mapes based upon their allegations of a lack of standing. Again, Rainey-Mapes alleges that Gordon/Queen Charters has sustained no damages because of the assignment or settlement agreement.

As discussed above, upon the meager record before us and absent evidence to the contrary, we cannot presume that the assignment/settlement agreement contained provisions extinguishing Gordon/Queen Charters' claims or providing indemnity for Sanger. Based upon the evidence introduced at trial, there was no error in submitting the special issues, nor in failing to disregard the jury's answers. Point of error four is overruled.

Similarly, in its fifth point of error, Rainey-Mapes complains of issues submitted concerning its negligence, contending that the issues were evidentiary only in that they failed to inquire whether Rainey-Mapes' negligence was a proximate cause of damage to anyone.

The issues inquired as follows:

Special Issue No. 8: Do you find from a preponderance of the evidence that Rainey-Mapes agreed with Sanger & Altgelt on behalf of William Gordon that Rainey-Mapes would furnish William Gordon and Queen Charters, Inc. insurance coverage without territorial exclusions covering the Queen Lilioukalani?

Answer: We do.

Special Issue No. 9: Do you find from a preponderance of the evidence that Rainey-Mapes International, Inc. failed to furnish insurance coverage without territorial exclusions covering the Queen Lilioukalani?

Answer: We do.

Special Issue No. 9A: Do you find from a preponderance of the evidence that the failure, if any, of Rainey-Mapes International, Inc. to furnish insurance coverage without territorial exclusions proximately caused the Queen Lilioukalani to be uninsured at the location of the sinking.

Answer: We do.

Rainey-Mapes contends that these issues fail to establish legal liability in favor of any claimant or against any defendant.

The parties stipulated at trial, in lieu of submitting damage issues to the jury, that Schmidt was entitled to $95,000.00 from the proceeds of an insurance policy, if any was in effect at the time of the loss, and that the sailboat was valued at least at the $150,000.00 face value of the alleged insurance policy.

The jury's answers establish that Rainey-Mapes agreed to provide insurance coverage without territorial exclusions, that Rainey-Mapes failed to provide such coverage, and that its failure proximately caused the boat to be uninsured when it sank. By its answers to issues eighteen and nineteen, the jury further found that Rainey-Mapes

was 60% negligent in proximately causing the insurance policy to be not free of territorial exclusions.

■ When we evaluate these answers and stipulations, we find that Rainey-Mapes agreed to provide insurance free of exclusions but failed to do so; that such failure was negligence attributable 60% to Rainey-Mapes; that such failure to provide a policy free of exclusions caused the boat to be uninsured; and that the boat was valued at $150,000.00. Thus, all elements of negligence were either submitted for jury determination or were stipulated. We hold that the jury's answers will support judgment against Rainey-Mapes. Point of error five is overruled.

In points of error six and seven it is alleged that there was no evidence or alternatively insufficient evidence to support the jury's answers concerning Rainey-Mapes' negligence in failing to procure an insurance policy free of territorial exclusions.

In response to Gordon's inquiry about territorial limits, Susan Johnson testified at trial that she contacted Jo Carpenter, an employee of Rainey-Mapes and asked her whether there were any territorial exclusions. According to Johnson, Carpenter agreed to send a specimen policy, but did not state whether or not there were territorial limitations. However, Carpenter told Johnson there would be automatic coverage from St. Thomas to Houston. Johnson also testified that Carpenter authorized her to issue a regular accord binder, which Johnson described as the standard binder showing that insurance coverage was bound pending receipt of the actual policy. As noted, the binder did not indicate that the policy contained territorial exclusions.

Carpenter testified that after she was contacted by Johnson to procure the insurance, she contacted Southern Maritime Insurance and was told the insurance could be placed with Colony. Carpenter admitted that she told Johnson that Gordon/Queen Charters would be covered on a trip from St. Thomas to Houston, and further stated that no mention of territorial exclusions or the route of travel from St. Thomas to Houston was made. According to Carpenter, she was not aware of any exclusions because Southern Maritime did not notify her of any. However, Carpenter did testify that had she seen the policy prior to the ship's loss, she would have checked with Southern to assure that the trip from St. Thomas to Houston was covered notwithstanding the policy exclusions.

Carpenter also testified that she informed Johnson that she could bind the coverage effective February 25, 1983. However, Carpenter defined binding coverage as placing an order for insurance which would have to in turn be ordered from the underwriter (Southern) before it was effective. Carpenter denied having authority to issue a paper binder binding Colony. She did testify that after Johnson "ordered" the insurance, she contacted Southern to bind the coverage, and then notified Johnson that the coverage was bound.

Rainey-Mapes argues that there is no evidence that it ever "promised, agreed with, or otherwise undertook to provide an exclusion free policy," but only that it agreed to provide a policy with coverage from St. Thomas to Houston. It contends that such a policy was provided, and a failure to disclose the exclusions constituting a deception did not occur. It further argues that nothing it did precluded the possibility that Colony would choose to limit its exposure.

From our review of all of the evidence, we find there is evidence of probative force and that it is sufficient to support the jury's answers to the special issues concerning Rainey-Mapes negligence in procuring a policy free of territorial exclusions. Carpenter testified that she was not in her office when the actual policy arrived from Colony, but that if she had been, following normal procedures, she would have verified that the policy covered the trip from St. Thomas to Houston and that

Gordon/Queen Charters were receiving the coverage they had requested.

Viewing the foregoing with other evidence that Johnson specifically inquired as to territorial exclusions, and that Carpenter confirmed the authority to bind coverage without mention of territorial exclusions, we conclude that the evidence sufficiently supports the findings that Rainey-Mapes was negligent in failing to procure the requested coverage. The fact that the policy provided coverage from St. Thomas to Houston through areas not otherwise excluded does not preclude a finding of a failure to inform Sanger or Gordon/Queen Charters of the exclusions, especially in light of evidence that Johnson specifically inquired about such exclusions. Points of error six and seven are overruled.

In point of error ten Rainey-Mapes contends that the trial court committed harmful error in excluding from evidence the assignment or agreement between Gordon/Queen Charters and Sanger because the agreement was allegedly material to show whether Gordon/Queen Charters suffered any actual damage. As discussed above, Rainey-Mapes attempted to offer the assignment through a bill of exception. The offer was rejected because the trial court made a determination that it was not a true "Mary Carter" agreement which would be admissible.

The agreement was not admitted into evidence for any purpose, including for the limited purpose of preserving error for this appeal. As concluded earlier, we cannot determine the substance of the agreement based upon the limited testimony concerning it developed at trial.

■ Rainey-Mapes does not complain that the trial court refused to admit the document during its bill of exception. It only complains of its exclusion from the jury. Absent the document in the record for review, we cannot determine whether the trial court erred in excluding it from the jury. Point of error ten is overruled.

In point of error eight Rainey-Mapes complains of the manner in which the dam-

ages were calculated. Gordon/Queen Charters also complains of the damage calculation. Thus, these points will be addressed together.

The parties stipulated that the face value of the insurance policy was $150,000.00. Gordon/Queen Charters was awarded $90,000.00 plus 30% of their attorney's fees. This amount was based on the jury's findings that Rainey-Mapes was 30% negligent, multiplied by the policy value ($150,000.00 × 30% = $45,000.00). The damages were then doubled for a total award of $90,000.00 plus 30% of their attorney's fees.

As Gordon/Queen Charters owed Schmidt $95,000.00 of the purchase price, Rainey-Mapes contends that Gordon/Queen Charters was entitled to recover only the $55,000.00 balance ($150,000.00 − $95,000.00 = $55,000.00). However, Gordon/Queen Charters contends that they are entitled to triple actual damages pursuant to TEX.INS.CODE ANN. art. 21.21 § 16(b)(1). They further argue that their actual damage is the difference between the fair market value of the ship before its loss and after its loss. Since the parties stipulated that the ship's value was $150,000.00 and it was a total loss, Gordon/Queen Charters argues that the damage amount is $150,000.00 and that the entire amount is subject to trebling. They further argue that a trebling of damages is supported by the jury's findings of both misrepresentation and a failure to provide the insurance coverage sought. Gordon/Queen Charters also seeks prejudgment interest and their entire attorney's fees without limitation to 30%.

Rainey-Mapes, as appellee, counters Gordon/Queen Charters' assertion with the argument that Gordon/Queen Charters lacked standing to sue and that Sanger's greater culpability extinguishes Rainey-Mapes' liability. These issues were previously rejected and we shall not again address them. However, Rainey-Mapes also argues that the damage award is erroneous, and should have been calculated as 30% of the $55,000.00 Gordon/Queen Char-

ters was entitled to, if any, under the policy, for a total award of $16,500.00. Rainey-Mapes also argues that there is no jury finding of "knowing misrepresentations" which would authorize a trebling of damages. Rainey-Mapes further alleges that Gordon/Queen Charters failed to preserve its alleged error concerning pre-judgment interest.

Article 21.21 § 16, as it applied prior to amendments in 1985, provided:

(a) Any person who has been injured by another's engaging in any of the practices declared ... to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or in any practice defined by [The Deceptive Trade Practices Act § 17.46] as an unlawful deceptive trade practice may maintain an action against a company or companies engaging in such acts or practices.

(b) In a suit filed under this section, any plaintiff who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorney's fees reasonable in relation to the amount of work expended.

■ The above quoted language of Article 21.21 states that a plaintiff *may* obtain three times actual damages. However, almost identical language contained in a prior version of The Deceptive Trade Practices Act was interpreted by the Texas Supreme Court in *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977) to required mandatory treble damages once liability is established. We apply the same logic to the pre–1985 version of Article 21.21 applicable to this lawsuit, and hold that the trial court was required to treble the damages.

Gordon/Queen Charters' point of error is sustained insofar as it relates to a trebling of damages. As Gordon/Queen Charters is liable to pay Schmidt $95,000.00 on the note and judgment, their actual damages are $150,000.00 and not merely the $55,000.00 balance. Thus, the damages are recalculated at $150,000.00 actual, trebled to $450,-

000.00. Of this amount, Rainey-Mapes is liable to Gordon/Queen Charters for 30%, or $135,000.00 plus interest at 10% and attorney's fees as set out in the judgment. Rainey-Mapes' eighth point of error complaining of the damage calculation is overruled.

Gordon/Queen Charters also contends that it is entitled to prejudgment interest at 10% from May 12, 1983, the date of the denial of liability. Gordon/Queen Charters prayed for an award of prejudgment interest. However, the record is silent with regard to any urging upon the trial court to make such award. At best, Gordon/Queen Charters' motion for judgment with proposed judgment can be interpreted as seeking interest from date of judgment. Under the circumstances we hold the contention has been waived.

In its ninth point of error, Rainey-Mapes contends that it is not liable for damages under Article 21.21 because it is not an insurance company, and thus Gordon/Queen Charters had no cause of action against it under the Insurance Code.

Article 21.21 § 16(a) provides that one who is injured by *another* who engages in unfair and deceptive acts may maintain an action against the *company or companies* engaging in such acts. Company or companies is not defined, however, § 23 of Article 21.21 provides that damages are to be paid only from the capital or surplus funds of the offending *insurance company*. (Emphasis ours). Thus, Rainey-Mapes argues that only an insurance company is liable for damages under Article 21.21.

■ Robert Mapes, vice-president and 50% owner of Rainey-Mapes, testified at trial that Rainey-Mapes is an insurance company. Thus, Rainey-Mapes' contention that it is not an insurance company is without merit in view of the uncontroverted evidence at trial that it is an insurance company. Rainey-Mapes is precluded from now asserting that it is not an insurer. Point of error nine is overruled.

■ Schmidt, as appellant, also argues that the trial court erred in doubling rather

than trebling its actual damages under Article 21.21. Schmidt was awarded $95,-000.00 in damages from Sanger, and that amount was doubled for a total award of $190,000.00. Based on the analogous holding in *Woods v. Littleton, supra,* we sustain Schmidt's point of error.

The actual damages of $95,000.00 are trebled for a total award of $285,000.00 against Sanger & Altgelt. Sanger's reply point asserting that Schmidt is not entitled to doubled or trebled damages in that a knowing misrepresentation was not found is overruled. Article 21.21 at the time of trial did not require a knowing misrepresentation, but merely provided for a trebling of damages to a prevailing party.

Sanger, as appellant, in its first point of error, alleges that Schmidt is not entitled to recover against it under Article 21.21 because Schmidt did not suffer an injury. Sanger argues that Schmidt was fully compensated by the directed verdict in his favor against Gordon/Queen Charters on the promissory note which was entered prior to the rendition of judgment against Sanger.

In *Mayo v. John Hancock Mutual Life Insurance Company,* 711 S.W.2d 5 (Tex. 1986) the plaintiff brought suit alleging a breach of contract, failure to pay under § 3.62 of the insurance code, and violations of Article 21.21 and the Deceptive Trade Practices Act. The trial court severed the section 3.62 and breach of contract actions, and after trial awarded plaintiffs their actual damages. The trial court then granted the insurers' summary judgment motion alleging that the Article 21.21 and DTPA claims were barred because of the recovery of actual damages. The Supreme Court reversed the case, holding that recovery under Article 21.21 would not constitute recovery for the same act or practice as recovery under section 3.62. The cause was remanded for trial on the Article 21.21 and DTPA violations. However, the Supreme Court stated that if the plaintiff prevailed at trial, the judgment would be offset by the amount of actual damages awarded in the prior trial.

We apply the same reasoning in this case. Schmidt's judgment against Gordon/Queen Charters on the note is not the same claim as Schmidt's claim against Sanger for misrepresentation under Article 21.-21. The jury found that Sanger made misrepresentations to Schmidt. Therefore, Schmidt is entitled to three times its actual damages as previously discussed. However, Schmidt's recovery against Sanger must be reduced dollar for dollar by any sums Schmidt recovers in actual damages from Gordon/Queen Charters. Sanger's first point of error is overruled.

In its second point of error, Sanger complains that the trial court erred in not submitting its requested special issues concerning alleged misrepresentations made to it by Rainey-Mapes. Sanger filed a cross-action against Rainey-Mapes seeking contribution or indemnity "in the event that any finding should be made adverse to [Sanger], with regard to any issue herein." No facts or allegations setting forth a basis for contribution or indemnity were included in the cross-action petition.

Gordon/Queen Charters never asserted a cause of action against Sanger. Thus the only party to whom Sanger could be liable giving rise to a right of contribution or indemnity was Schmidt. Sanger did not respond to Schmidt's action in intervention. In its original pleadings as plaintiff, Sanger did not allege facts which, if proven, would establish a right of contribution or indemnity from Rainey-Mapes to Sanger for liability to Schmidt. Thus Sanger has no pleadings to support an award of contribution or indemnity.

Sanger was not entitled to special issues which sought to establish that Rainey-Mapes represented to Sanger that it had procured an insurance policy free of territorial exclusions, since Sanger had no pleadings upon which recovery could be based. *Nowsco Services Division v. Lassman,* 686 S.W.2d 197 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Sanger's second point of error is overruled.

No other points of error are raised. In summary, the judgment against Rainey-

Mapes in favor of Gordon/Queen Charters is reformed to reflect an award to Gordon/Queen Charters of $135,000.00 plus interest and attorney's fees as set out in the judgment. The judgment against Sanger & Altgelt in favor of the Estate of Schmidt is reformed to reflect an award of damages to the Estate in the amount of $285,000.00. As reformed, the judgment is affirmed.