**MOODY NATIONAL BANK OF GALVESTON, Plaintiff,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY and Galveston Insurance Associates, Defendants.**

No. Civ.A. G–02–039.

United States District Court,
S.D. Texas,
Galveston Division.

April 5, 2002.

Andrew J Mytelka, Joseph Alan Charles Fulcher, Greer Herz & Adams, Galveston, TX, for Moody National Bank of Galveston, plaintiff.

Michael Keeley, Strasburger & Price, Dallas, TX, Gary J Siller, Strasburger & Price, LLP, Houston, TX, for St Paul Mercury Insurance Company, defendant.

Rick Lee Oldenettel, Oldenettel & McCabe, Houston, TX, for Galveston Insurance Associates, defendant.

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

KENT, District Judge.

On December 19, 2001, Plaintiff Moody National Bank of Galveston ("MNB") filed suit against Defendant St. Paul Mercury Insurance Company ("St.Paul") in the 56th Judicial District Court of Galveston County, Texas, alleging causes of action for breach of insurance contract, violations of the Texas Insurance Code, Tex.Ins.Code arts. 21.21, 21.55, breach of implied warranty of suitability, breach of express warranty of fitness for a particular purpose, and seeking a declaratory judgment of the Parties' rights and obligations under the insurance policy. On December 26, 2001, Plaintiff filed its First Amended Original Petition, asserting additional claims for breach of implied warranty of suitability, breach of express warranty of fitness for a particular purpose, and negligence against Defendant Galveston Insurance Associates ("GIA"). Defendant St. Paul then timely removed the action to this Court on January 22, 2002 on the basis of diversity jurisdiction. Now before the Court is Plaintiff's Motion to Remand. Because the Court finds that subject matter jurisdiction is lacking, Plaintiff's Motion to Remand is hereby **GRANTED.**

## I.

The facts giving rise to the present lawsuit are as follows. According to Plaintiff's First Amended Original Petition, Defendant GIA solicited MNB to purchase insurance coverage for its various banking facilities for property losses stemming from burglary, theft, and mysterious disappearance. Pursuant to GIA's solicitation, MNB purchased a Financial Institution Bond (Policy No. 0442BD0023) issued by Defendant St. Paul on September 17, 1998 ("the Policy"). The Policy was effective from September 22, 1998 to the date of cancellation or termination, and provided MNB with extended insurance coverage and indemnity for a variety of losses, most notably including "[l]oss of property resulting directly from robbery, burglary, misplacement, mysterious unexplainable disappearance and damage thereto or destruction thereof ... while the property is lodged or deposited within offices or premises located anywhere." (Policy ¶ B1.) Within the effective Policy period, specifically sometime between February 28, 2001, and March 5, 2001, Plaintiff avers that MNB's main facility located at 2302 Post Office in Galveston, Texas was burglarized. The burglars allegedly stole cash, coins, currency, and jewelry valued at approximately $851,210.00 from a file safe located on the seventh floor of the bank in the office of Robert L. Moody, Sr. ("Moody"),

the Chairman of the Board and Chief Executive Officer of MNB. Soon after the burglary, MNB submitted a claim to St. Paul requesting payment for this property loss. St. Paul, however, refused to pay MNB's claim on the stated ground that the stolen items were the personal property of Moody, not of Plaintiff MNB, and therefore did not constitute the type of property covered under the Policy.[1] In order to mitigate its damages, MNB subsequently paid $841,110.00 to Moody to compensate him for his loss of property.[2]

On the basis of these facts, MNB filed a lawsuit in Texas state court against Defendant St. Paul for breach of insurance contract, violations of the Texas Insurance Code, Tex.Ins.Code arts. 21.21, 21 .55, breach of implied warranty of suitability, breach of express warranty of fitness for a particular purpose, and seeking a declaratory judgment of the Parties' rights and obligations under the insurance policy. In the alternative, MNB also pled causes of action against Defendant GIA for breach of implied warranty of suitability, breach of express warranty of fitness for a particular purpose, and negligence. With specific regard to these latter claims, Plaintiff avers that GIA is subject to liability for making affirmative misrepresentations regarding the scope of coverage provided under the Policy.

---

1. It appears from the record that St. Paul denied coverage to MNB primarily on the basis of Section 10 of the Policy, which states in pertinent part: "This bond shall apply to loss of Property (1) owned by the Insured, (2) held by the Insured in any capacity, or (3) for which the Insured is legally liable." St. Paul maintains that the property at issue here was not owned by MNB, held by MNB as part of its business operations, nor can be characterized as property for which MNB is legally liable. Instead, St. Paul postulates that the pilfered property comprised the personal property of Moody (who apparently preferred

storing his personal valuables in the office safe, as opposed to a safe deposit box), and therefore is not the type of property covered under the Policy.

2. Moody also allegedly received $10,000.00 under his homeowner's insurance policy to cover his losses, thereby accounting for the proportionate reduction in payment by MNB. Incidentally, St. Paul cites Moody's eligibility for homeowner's coverage as further proof that the stolen goods constituted nothing more than personal property.

## II.

Defendant removed Plaintiff's action on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332; § 1441(a). Furthermore, an examination of the face of Plaintiff's Petition reveals that no basis exists for federal question jurisdiction pursuant to 28 U.S.C. § 1331. Consequently, for the Court to enjoy subject matter jurisdiction over this removed action, there must be complete diversity of citizenship between the properly joined Plaintiff and Defendants, 28 U.S.C. § 1332, and no properly joined Defendant may be a resident of the state of Texas, 28 U.S.C. § 1441(b).

In order to invoke diversity jurisdiction under § 1332, the amount in controversy must exceed $75,000, and there must exist complete diversity of citizenship between the properly joined Plaintiff and Defendants. *See* 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 3 Cranch 267, 268, 2 L.Ed. 435 (1806). The first requirement for diversity jurisdiction is satisfied because neither Party disputes that the amount in controversy exceeds $75,000. With regard to complete diversity of citizenship, the Parties also agree as to the citizenship facts. Plaintiff MNB is a Texas corporation with its principal place of business in Galveston, Texas. Defendant St. Paul is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Finally, Defendant GIA is a Texas corporation with its principal place of business in Galveston, Texas.

Because the Parties concur that both Plaintiff and Defendant GIA are residents of the state of Texas, the key inquiry in resolving Plaintiff's Motion to Remand is whether or not Defendant GIA has been properly joined to this action. Defendant St. Paul contends that GIA was fraudulently joined to destroy diversity jurisdiction in federal court, and therefore should be dismissed on that ground. If Defendant GIA was fraudulently joined to this

lawsuit, then removal is clearly warranted because complete diversity of citizenship exists between Plaintiff and Defendant St. Paul. If, on the other hand, Defendant GIA is a proper party to this action, removal jurisdiction would be absent. Specifically, removal would be improper for two reasons: there would not be complete diversity of citizenship between Plaintiff and Defendants as required by 28 U.S.C. § 1332, and at least one Defendant would be a resident of the state in which the removal court sits, contrary to the provisions of 28 U.S.C. § 1441(b).

■ The Court begins by noting that "the burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A Dec.1981). In order to prove that a non-diverse defendant was fraudulently joined in a case to defeat diversity jurisdiction, the removing party must show either that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir.1995). "If the plaintiff has *any* possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law." *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir.1995) (emphasis added).

■ The Fifth Circuit has endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims, specifically permitting courts to resolve disputes by "piercing the pleadings" and "considering summary judgment-type evidence such as affidavits and deposition testimony."

*Cavallini,* 44 F.3d at 263. In assessing a "no possibility of recovery" fraudulent joinder claim, the Court must evaluate all of the contested factual allegations in the light most favorable to the plaintiff. In addition, the Court must resolve any uncertainties concerning the current status of controlling state substantive law in favor of the plaintiff. *See Sid Richardson,* 99 F.3d at 751; *Burden,* 60 F.3d at 216. "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990); *see also Burden,* 60 F.3d at 216.

### III.

■ Defendant's burden is indeed a heavy one, and the Court finds that Defendant has failed to carry it. To prove its allegation of fraudulent joinder, St. Paul argues both that MNB fraudulently pled jurisdictional facts, and that MNB has no possibility of recovery against GIA in state court. First, and notwithstanding the Parties' agreement as to the citizenship facts, St. Paul oddly and quite erroneously attempts to frame one of its arguments as an allegation of outright fraud in Plaintiff's pleading of jurisdictional facts. Specifically, St. Paul avers that MNB only joined Defendant GIA to the action to destroy diversity jurisdiction in federal court, as evidenced by statements made by MNB's President, Vic Pierson ("Pierson"), and MNB's Counsel, Robert Shattuck, Jr. ("Shattuck"), to GIA's President, Thad McCormick ("McCormick"). According to McCormick, Pierson stated during a conversation with him that MNB did not believe that GIA had done anything wrong and therefore did not intend to recover any damages from GIA. (McCormick Dep. at 9–10.) Additionally, McCormick alleges

that Shattuck later confirmed Pierson's statement that MNB was only suing GIA to salvage jurisdiction in state court. (*Id.* at 15.) In contrast, however, Pierson testifies that he told McCormick only that MNB did not want to sue GIA, and that one consequence of naming GIA to the lawsuit would be retention of state court jurisdiction. (Pierson Dep. at 7, 9.) Pierson also maintains that MNB fully intends to recover damages from any Defendant responsible for MNB's losses pertaining to this matter, including Defendant GIA. (*Id.* at 21.)

At the outset, the Court expresses its perplexity at St. Paul's attempt to characterize its argument as an allegation of outright fraud in Plaintiff's pleading of the jurisdictional facts. By St. Paul's own admission, the Parties concur on the jurisdictional facts relating to the citizenship of the litigants, and the Court is therefore befuddled as to how St. Paul possibly portends any allegation of fraud in Plaintiff's jurisdictional pleadings. Nevertheless, the Court addresses St. Paul's argument on the merits. As an initial matter, the Court emphasizes that all factual disputes must be resolved in Plaintiff's favor for purposes of conducting a fraudulent joinder analysis. Although St. Paul has undoubtedly presented viable evidence demonstrating that MNB may have joined GIA solely for the purpose of destroying federal diversity jurisdiction, it is also true that Plaintiff has proffered contrary evidence indicating that MNB fully intends to recover against GIA pursuant to its state court claims. Because Plaintiff challenges St. Paul's version of the facts, and because the Court is bound to construe any contested allegations in the light most favorable to Plaintiff, the Court must reject the veracity of McCormick's allegations. Even assuming arguendo, however, that Pierson and Shattuck made the statements alleged by McCormick, and that these statements

somehow accurately depicted the views of MNB, the Court seriously queries the relevance of this fact. While St. Paul is correct in suggesting that fraudulent intent may be probative of fraudulent joinder, the appropriate and exclusive method for discerning fraudulent joinder, as expressly and repeatedly sanctioned by the Fifth Circuit, depends not upon the types of statements allegedly made by Pierson and Shattuck or similarly oriented lunchroom counter talk, but rather upon a thoughtful examination of Plaintiff's causes of actions and Plaintiff's possibility of recovering under each. Only if the Court determines that Plaintiff has *no* possibility of recovering against Defendant GIA under any state law cause of action will St. Paul be able to establish a showing of fraudulent joinder in fact and in law. In light of this clear and uncontroverted Fifth Circuit authority, the Court accords no weight to any statements allegedly made by Pierson and Shattuck in determining whether MNB fraudulently joined GIA to this lawsuit.

██ Turning now to Plaintiff's state law causes of action, then, the Court concludes that Plaintiff has some possibility of recovering against GIA in state court, and that Plaintiff therefore did not fraudulently join GIA to this lawsuit. Principally, MNB avers that GIA breached an implied warranty of suitability, breached an express warranty of fitness for a particular purpose, and committed negligence by affirmatively misrepresenting to MNB that the Policy provided coverage for property located on the seventh floor of the bank when in fact it did not. MNB specifically alleges that it demanded coverage for the seventh floor of the bank, and in response to this demand, GIA represented that it

had procured a policy to cover such risks. Thus, MNB contends that if the Policy does not indeed cover Moody's losses, GIA should be held liable for making affirmative misrepresentations to the contrary. In its Response, St. Paul argues that MNB cannot possibly recover against GIA under any of these theories since Texas law does not recognize a cause of action for breach of implied warranty of suitability, breach of express warranty of fitness for a particular purpose, or negligence, under the circumstances alleged.

██ Initially, the Court agrees with St. Paul that Plaintiff has probably failed to state a valid claim for breach of implied warranty of suitability or breach of express warranty of fitness for a particular purpose.[3] However, after resolving all ambiguities in controlling state law in Plaintiff's favor, the Court finds that MNB can potentially recover from GIA under a theory of common law negligence. In *May v. United Services Association of America*, 844 S.W.2d 666 (Tex.1992), the Texas Supreme Court held that an insurance agent owes certain common law duties to a client for whom he undertakes to procure insurance, namely "to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so." *Id.* at 669. Although the court ultimately determined that the insurance agent in *May* had not behaved negligently, it elucidated the various instances in which an insurance agent's actions might constitute actionable negligence. The court specifically embraced the holdings in two sets of appellate court cases where negligent procurement had been found, those where the insurance agents "induced the plaintiff to

---

3. Because the Court concludes that it lacks subject matter jurisdiction to adjudicate this dispute, it must refrain from dismissing Plaintiff's breach of warranty claims altogether. However, the Court expresses its doubts that these claims will even survive the dismissal stage in state court, since Plaintiff does not appear to have adequately alleged an implied or express warranty recognized and actionable under Texas law.

rely on his performance of the undertaking to procure insurance, and the plaintiff reasonably, but to his detriment, assumed that he was insured against the risk that caused his loss," and those where the insureds were "led wrongly to believe that their policy provided protection against a particular risk that was in fact excluded from the policy's coverage." *Id.* at 669–70 (citing *Burroughs v. Bunch,* 210 S.W.2d 211, 213–14 (Tex.Civ.App.—El Paso 1948, writ ref'd); *Scott v. Conner,* 403 S.W.2d 453, 458 (Tex.Civ.App.—Beaumont 1966, no writ); *Rainey–Mapes v. Queen Charters, Inc.,* 729 S.W.2d 907, 913–14 (Tex. App.—San Antonio 1987, writ dism'd by agr.); *Pete's Satire, Inc. v. Commercial Ins. Co.,* 698 P.2d 1388, 1389–90 (Colo.App. 1985); *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388, 390 (1984)). Regarding this latter category of cases, the Texas Supreme Court notably referenced *Rainey–Mapes v. Queen Charters, Inc.,* 729 S.W.2d 907 (Tex.App.—San Antonio 1987, writ dism'd by agr.), a case in which a Texas appellate court affirmed a jury's finding of negligence where an insurance agent gave assurances to a shipowner that his policy would cover his contemplated trip from the Virgin Islands to Houston, when in fact the policy contained a territorial exclusion clause encompassing points along that very route. *See id.* at 913–14. Based in part on the decision in *Rainey–Mapes,* the Texas Supreme Court in *May* established a negligence cause of action for an agent's affirmative misrepresentations

regarding the scope of coverage under a policy.[4] *May,* 844 S.W.2d at 669–70.

In light of the Texas Supreme Court's holding in *May,* the Court believes that Plaintiff can possibly recover from GIA under a theory of negligence. MNB avers that it specifically requested coverage for property located on the seventh floor of the bank, and that in response GIA erroneously represented to MNB that the Policy would cover such risks. Based on these facts, a Texas state court could reasonably conclude that GIA made affirmative misrepresentations to MNB that wrongly led MNB to believe that the Policy covered a particular risk that was in fact excluded from coverage, thereby subjecting GIA to negligence liability under *May.* While the Court acknowledges that MNB's allegations are vague and broadly stated at present, this Court is obligated to construe all disputed questions of fact in the light most favorable to Plaintiff, and to resolve any ambiguities in controlling state law in favor of Plaintiff as well. *See Sid Richardson,* 99 F.3d at 751; *Burden,* 60 F.3d at 216. Because *May* requires an insurance agent to procure the specific coverage requested by an insured, or else inform the insured of its failure to procure such coverage, the Court is compelled to conclude that Plaintiff MNB could conceivably recover against Defendant GIA in a Texas state court under a theory of negligent procurement, and that Defendant St. Paul has consequently failed to carry it heavy burden of demonstrating fraudulent joinder.[5]

**4.** Incidentally, the *May* court declined to decide whether its theory of agent liability also extended to an agent's failure to disclose certain limitations in a policy's coverage. 844 S.W.2d at 670 n. 10.

**5.** The Court additionally notes that MNB could recover against GIA under Article 21.21 of the Texas Insurance Code, which allows an insured to bring an action for violations of § 17.46(b) of the DTPA, including an insur-

ance agent's affirmative misrepresentations regarding the scope of insurance coverage. *See* Tex.Ins.Code art. 21.21., § 16(a). *See also, e.g., Thomas v. Ohio Cas. Group of Ins. Companies,* 3 F.Supp.2d 764, 766 (S.D.Tex. 1998) (Kent, J.); *Garrison Contractors, Inc. v. Liberty Mutual Ins. Co.,* 927 S.W.2d 296, 299–300 (Tex.App.1996—EPaso, writ granted); *State Farm Fire & Cas. Co. v. Gros,* 818 S.W.2d 908, 912–13 (Tex.App.—Austin 1991,

## IV.

For all of the reasons set forth above, the Court holds that Defendant GIA was not fraudulently joined as a party to this action. As such, the presence of GIA as a properly joined Defendant destroys diversity jurisdiction in this case, and this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims under 28 U.S.C. § 1332(a). The Court accordingly hereby **GRANTS** Plaintiff's Motion to Remand, and **REMANDS** this lawsuit to the 56th Judicial District Court of Galveston County, Texas, for **LACK OF SUBJECT MATTER JURISDICTION.**

Furthermore, Section 1447(c) allows the Court to award just costs and reasonable attorney's fees incurred as a result of an improper removal. *See* 28 U.S.C. § 1447(c). Given this Court's determination that removal was improper, the award of both costs and attorneys' fees against Defendant St. Paul is permitted in this Court's discretion. *See Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993). While the Fifth Circuit has upheld the awarding of sanctions for improper removal without requiring a finding of bad faith, it has also held that the nonremovability of the action must be obvious. *See News-Texan, Inc. v. City of Garland,* 814 F.2d 216, 220 n. 10 (5th Cir.1987). It does not appear that Defendant St. Paul removed this case in bad faith, or that nonremovability of the case was obvious. Accordingly, because Defendants, although acting in error, arguably had an objectively reasonable basis for removal, the Court **DENIES** Plaintiff's request for sanctions.

Finally, the Court notes that pursuant to the clear language of 28 U.S.C. § 1447(d), an order remanding a case for lack of subject matter jurisdiction is unreviewable by appeal, mandamus, or otherwise. *See also Things Remembered, Inc. v. Petrarca,*

no writ) (all recognizing a cause of action under the DTPA and the Texas Insurance

516 U.S. 124, 127, 116 S.Ct. 494, 496, 133 L.Ed.2d 461 (1995); *Angelides v. Baylor College of Med.,* 117 F.3d 833, 835 (5th Cir.1997); *Linton v. Airbus Industrie,* 30 F.3d 592, 600 (5th Cir.1994); *Tillman v. CSX Transp., Inc.,* 929 F.2d 1023, 1024, 1027 (5th Cir.1991). The Court respectfully defers any unresolved issues to the remand court, and instructs the Parties not to file any further pleadings regarding this lawsuit in this Court, including Motions to Reconsider and the like. Any and all further relief should be sought from the remand court. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**

Code for affirmative misrepresentations made by an insurance agent).