United States Court of Appeals,

Fifth Circuit.

No. 94-10925

Summary Calendar.

Jimmy L. BURDEN, et al., Plaintiffs,

Jimmy L. Burden, Plaintiff-Appellant,

v.

GENERAL DYNAMICS CORPORATION, et al., Defendants,

Homer F. Davis, Individually and Frank E. Riney, Individually,
Defendants-Appellees.

Aug. 4, 1995.

Appeal from the United States District Court for the Northern
District of Texas.

Before DUHÉ, WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge:

In this employment discrimination case, Plaintiff-Appellant
Jimmy L. Burden[1] appeals from the district court's denial of his
motion for remand to the state court and from its subsequent grant
of summary judgment dismissing his claim as against Homer Davis and
Frank Riney who, together with their employer, General Dynamics
Corporation (General Dynamics), Burden had sued for, *inter alia,*
intentional infliction of emotional distress. Finding no
reversible error in the district court's determination that it had

---

[1]The three other original Plaintiffs-Appellants, C.B. Cox,
Jr., William L. Comes, and Homer E. Boyd, were voluntarily
dismissed from the instant case after it was appealed to this
court. For the sake of convenience, the discussion relating to
the case proceedings refers to Burden only, although he was
joined by the three others in filing suit and subsequently
appealing to this court.

1

diversity jurisdiction because the non-diverse defendants, Davis and Riney, had been fraudulently joined, and agreeing with that court's take-nothing summary judgment dismissing Burden's claims against Davis and Riney, we affirm.

I

FACTS AND PROCEEDINGS

Burden was hired in 1967 by the Fort Worth Division of General Dynamics. In the summer of 1992, General Dynamics informed Burden that his position with the company would be reclassified from a management position to a non-managerial personnel position. Riney, as Vice President of the Contract Estimating and Business Management Department, made the decision to reclassify Burden's job as part of an effort to reduce the General Dynamics work force. Davis—who, as Vice President of the Estimating Department, reported directly to Riney—implemented Riney's plan for job reclassifications within the company.

Prior to the reclassification of his position, Burden served as Director of Administration and Operations. On August 3, 1992, Burden's job was reclassified to the "staff" position of Estimating Specialist. Although he experienced a sharp decline in his job duties, Burden retained his previous pay grade, salary, and parking space. Effective December 31, 1992, the fifty-seven year-old Burden voluntarily retired from General Dynamics.

Burden, a Texas resident, originally filed suit in state court, seeking to recover damages against Riney, Davis, and General Dynamics for age discrimination in violation of the Texas Human

2

Rights Act (the Act) and for negligent and intentional infliction of severe emotional distress.  General Dynamics is incorporated in Delaware and has its principal place of business in Virginia. Riney and Davis are citizens and residents of Texas.

The defendants removed the case to district court based on complete diversity of citizenship, alleging that Riney and Davis had been fraudulently joined to defeat diversity jurisdiction. Burden filed a motion to remand the case to state court, contending that the district court lacked jurisdiction because Burden's action did not involve claims arising under the Constitution, treaties, or laws of the United States and because complete diversity did not exist among the parties.  Not surprisingly, Burden insisted that Riney and Davis were not fraudulently joined to defeat removal to federal court.

The district court denied Burden's motion to remand the case to state court, finding on the basis of the state court pleadings, affidavits, and other evidentiary materials, that no reasonable basis existed for predicting that Burden could recover against Riney and Davis in a Texas court.  The district court concluded that the joinder of Riney and Davis was fraudulent and that their presence in the action should be disregarded for removal purposes. In its ruling denying the motion to remand, the court recognized that Burden had abandoned his claims for *negligent* infliction of emotional distress, for which no cause of action exists in Texas. In addition, the court observed that Burden had also abandoned his claims against Riney and Davis for age discrimination in violation

of the Act.  Burden had not pleaded that Riney and Davis were employers for purposes of the Act and had not named Riney and Davis in the discrimination charge filed with the Texas Commission on Human Rights.  The district court subsequently granted summary judgment in favor of all defendants on Burden's claims for intentional infliction of emotional distress, and rendered a final Rule 54(b) judgment dismissing only Davis and Riney as defendants in this case.[2]

## II

## ANALYSIS

A. STANDARD OF REVIEW

This appeal is interlocutory:  Although the district court granted summary judgment to all defendants on Burden's emotional distress claims, it entered final judgment of dismissal as to Davis and Riney only.  The court did not dismiss General Dynamics as a defendant in the case.

A district court's refusal to remand an action to the state court is ordinarily not a final order and cannot be reviewed unless the court enters a final judgment.[3]  The district court in the instant case, however, expressed its intent to enter a final and

---

[2]Fed.R.Civ.P. 54(b).  As the district court's final judgment pursuant to Rule 54(b) dismissed Burden's intentional infliction of emotional distress claim against Riney and Davis only, the court retained jurisdiction over all of Burden's claims against General Dynamics.  As a result, we cannot review the grant of summary judgment in favor of General Dynamics on the intentional infliction of emotional distress claim.

[3]*See B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 548 (5th Cir. Unit A 1981).

4

appealable judgment, pursuant to Rule 54(b), in favor of Riney and Davis—but not General Dynamics—in its order granting summary judgment, stating that "there is no just reason for delay in, and [the court] hereby directs, entry of final judgment as to the dismissal of plaintiffs' claims against defendants Davis and Riney."[4]  As Burden appeals from the entry of judgment ordering that he take nothing against Riney and Davis and dismissing his claims against them, we review the denial of the motion to remand and the grant of summary judgment as to Riney and Davis only.

Our review of the district court's decision to deny the motion to remand to state court is *de novo,* as it is a question of law.  In determining the validity of a claim of fraudulent joinder, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff."[5]  The court must also resolve all ambiguities in the controlling state law in the plaintiff's favor.[6]  If the plaintiff has any possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law.[7]  We do not determine whether the plaintiff will actually or even

---

[4]*See* Fed.R.Civ.P. 54(b) (stating that an appeal will lie from a partial summary judgment only "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment").

[5]*See B., Inc.,* 663 F.2d at 549.

[6]*See Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992);  *B., Inc.,* 663 F.2d at 549.

[7]*See Dodson,* 951 F.2d at 42;  *B., Inc.,* 663 F.2d at 550.

5

probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so.[8]

In reviewing a grant of summary judgment, we apply the same standards as those that govern the district court in its determination.[9] Summary judgment must be granted if the court, viewing the facts and inferences in the light most favorable to the non-moving party, determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] The moving party must demonstrate by competent evidence that no issue of material fact exists.[11] The non-moving party then has the burden of showing the existence of a specific factual issue which is disputed.[12] If any element of the plaintiff's case lacks factual support, a district court should grant a defendant's motion for summary judgment.[13]

B. FRAUDULENT JOINDER CLAIM

1. *Scope of District Court's Examination*

Burden argues that the district court erred in looking beyond

---

[8]*See Dodson,* 951 F.2d at 42-43.

[9]*See Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 177 (5th Cir.1990), *cert. denied,* --- U.S. ----, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

[10]Fed.R.Civ.P. 56(c).

[11]*See Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir.1994); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir.1987).

[12]*See Celotex Corp. v. Catrett,* 477 U.S. 317, 321-25, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

[13]*See id.*

the pleadings in determining that Riney and Davis were fraudulently joined. He contends that a conflict exists within our court's jurisprudence on the question whether only the pleadings should be considered in a fraudulent joinder claim or whether the court may instead "pierce the pleadings" and examine affidavits and other evidentiary material as well. In support of his position, Burden cites to *Green v. Amerada Hess Corp.*[14]

In *Green,* we reversed the district court's denial of a motion for remand to the state court, finding that the court erred in conducting a full evidentiary hearing to resolve disputed factual issues relating to matters of substance rather than jurisdiction. We observed that, in considering a claim of fraudulent joinder, the "court must normally assume all the facts as set forth by the plaintiff to be true."[15] The ambit of our holding in *Green* is not so broad, however, as to dictate that a district court must look solely at the pleadings in determining whether a plaintiff has any possibility of recovery in state court against the non-diverse parties whose joinder is questioned. *Green* merely teaches that the district court should not conduct a full-scale evidentiary hearing on questions of fact, but rather should make a summary determination by resolving disputed facts in favor of the

---

[14]707 F.2d 201 (5th Cir.1983), *cert. denied* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984).

[15]*See id.* at 205. In *Green* we recognized a limited exception to the requirement that a court resolve disputed facts in favor of the plaintiff for cases in which the plaintiff is collaterally estopped from contesting a given issue or fact. *See id.* at 205-06.

plaintiff.

We clearly expressed in *B., Inc. v. Miller Brewing Co.*[16] that "[i]n support of ... [a] motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint."[17]  Our decisions subsequent to *B., Inc.* have consistently maintained that a district court may look to evidence outside of the pleadings in determining a fraudulent joinder claim.[18]  Thus, we hold that the district court did not err in looking beyond Burden's pleadings to determine removal jurisdiction.  Lest there remain even a shadow of a doubt as to this circuit's position, we reiterate—in hopes that further pronouncement will not be necessary—that in testing for fraudulent joinder the district court in its discretion may "pierce the pleadings," albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead resolve all disputed

---

[16]663 F.2d 545 (5th Cir. Unit A Dec. 10, 1981).

[17]*See id.* at 549.

[18]*See, e.g., Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 263 (5th Cir.1995) (court can consider summary judgment-type evidence);  *Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir.1994) (fraudulent joinder claims can be resolved by "piercing the pleadings" and considering summary judgment-type evidence);  *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 816 (5th Cir.1993) (upholding district court's consideration of affidavits and depositions), *cert. denied,* --- U.S. ----, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993);  *LeJeune v. Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir.1992) ("court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties");  *Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98, 100 (5th Cir.1990) (trial court properly considered affidavits and depositions), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

8

questions of fact in favor of the plaintiff.

2. *Possibility That Texas Law Would Recognize Claim*

(a) *Fraudulent Joinder Criteria*

The removing party bears the heavy burden of proving that non-diverse defendants have been fraudulently joined to defeat diversity, either by showing that (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts, or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court.[19] The instant case involves the latter inquiry: whether, "as a matter of law, there [is] no reasonable basis for predicting that the plaintiff might establish liability against a named in-state defendant in state court."[20] If, after resolving all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party (Burden), there is no possibility that the state court would recognize a valid cause of action against the non-diverse defendants (Riney and Davis), then those defendants have been fraudulently joined and must be ignored for purposes of diversity jurisdiction.[21] That being the case, the district court had proper subject matter jurisdiction to adjudicate

---

[19]*See Jernigan,* 989 F.2d at 815 (*citing B., Inc.*).

[20]*See B., Inc.,* 663 F.2d at 550.

[21]This is not to say that such defendants must be dismissed, for the district court presumably had jurisdiction *in personam* over the fraudulently joined parties.

9

Burden's claims,[22] so we turn now to an analysis of the state law pertinent to the instant case.

(b) *Possibility of Recovery for Intentional Infliction of Emotional Distress*

To prevail in a suit for intentional infliction of emotional distress in Texas, a plaintiff must show (1) intentional or reckless conduct; (2) that is extreme or outrageous; (3) that caused emotional distress; and (4) that was severe in nature.[23] A defendant is liable for outrageous conduct "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[24] We here conclude that, taking the facts that Burden related in his deposition testimony to be true, no reasonable basis exists for predicting that Burden could meet the elements of an intentional infliction of emotional distress claim and recover against Riney and Davis under Texas law on that claim.

In his deposition Burden expressed the opinion that he was outrageously treated because, even though his job performance was excellent, he was reclassified into a position in which he was isolated and given no input into critical management decisions. He testified that the reclassification "humiliated" him and caused him

---

[22]*See Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42-43 (5th Cir.1992).

[23]*See Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993) (*citing* Restatement (Second) of Torts § 46(1) (1965)).

[24]*See id.* at 621 (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)).

10

to have problems with his health and his marriage because his former job responsibilities were given to a younger man. Burden stated that his office and secretary were taken away despite the fact that he had been assured by Davis that he (Burden) would be keeping both. He was, however, given another, slightly smaller office and access to the company's secretarial staff. Burden also testified that Davis gave him "menial" short-term assignments and that Davis never talked with him, in essence ostracizing him from every activity in the department. In discussing his eventual retirement from General Dynamics, however, Burden admitted in his deposition that no one ever told him explicitly that he was required to retire from the company.

According to Burden, in one conversation with Riney, Burden expressed his dissatisfaction with his new position under the reclassification scheme. Burden admitted, however, that he did not know whether Riney did anything in response to that conversation. Burden also stressed that Riney and Davis had not implemented the reclassification plan in accordance with company policy.

Taking all of Burden's allegations as true, the actions of Riney and Davis might be deemed insensitive to Burden's feelings and contrary to the company's policy or procedure for implementing job reclassifications. Still, there is nothing in the pleadings, affidavits, or deposition testimony to indicate that the conduct of Riney or Davis even came close to the level of outrageousness needed to succeed on a Texas claim of intentional infliction of emotional distress. All of the Texas cases which have adjudicated

11

such a claim have required conduct far more egregious than that described here by Burden.

For example, in *Nayef v. Arabian American Oil Co.*[25], the Texas Court of Appeals held that it was not extreme and outrageous conduct for an employer to dispute an employee's claimed inability to do desert driving, to refuse to provide the employee with transportation, and to transfer the employee to a different position and location, without any reduction in salary or benefits.[26] Similarly, in *Randall's Food Mkts., Inc. v. Johnson*[27], the Texas Supreme Court held that it was not extreme and outrageous for an employer to question an employee in a "severe and curt" tone about her taking a wreath from the store where she worked without paying for it.[28] In the same vein, the Texas Court of Appeals in *Sebesta v. Kent Elecs. Corp.*[29] stated that it was not extreme and outrageous for employer to arrange an "exit parade" of the terminated employee for the busiest part of day, to give the employee a memorandum containing negative comments regarding her job performance, and to tell the employee, immediately before her termination, that she could apply vacation days to days she had

---

[25]895 S.W.2d 825 (Tex.App.—Corpus Christi 1995, n.w.h.).

[26]*See id.* at 828.

[27]891 S.W.2d 640 (Tex.1995)

[28]*See id.* at 644.

[29]886 S.W.2d 459 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (motion for rehearing pending).

12

missed due to jury duty.[30]

On the other end of the spectrum, the Texas Court of Appeals in *Hooper v. Pitney Bowes, Inc.*[31], found that supervisors' statements that an employee was "cultist," "occult," "unchristian," "a sorceress," "satanistic," and "a witch" were sufficient to support a jury's implicit finding of extreme and outrageous conduct because of the "high degree of opprobrium" attached to those terms.[32] Burden proffers nothing of that extreme nature here. In another such case, *Wornick Co. v. Casas*[33], the Texas Supreme Court surveyed Texas cases in which conduct had been found to be outrageous in the employment setting[34] and compared them to the facts of the case then before it. The *Casas* court concluded that, when compared to the conduct considered in the cases surveyed, the subject employer's conduct—having a security guard escort the plaintiff from the workplace after she was discharged—was not sufficiently outrageous, as a matter of law, to state a claim for intentional infliction of emotional distress.[35]

The federal experience with this Texas tort has paralleled that of the state courts. In *Wilson v. Monarch Paper Co.*[36], we

---

[30]*See id.* at 463-64.

[31]895 S.W.2d 773 (Tex.App.—Texarkana 1995, writ requested).

[32]*See id.* at 776.

[33]856 S.W.2d 732 (Tex.1993).

[34]*See id.* at 735-36 (citing cases).

[35]*See id.* at 736.

[36]939 F.2d 1138 (5th Cir.1991).

13

reviewed a district court jury verdict awarding the plaintiff damages for, *inter alia,* intentional infliction of emotional distress based on Texas law.  The plaintiff presented evidence that his former job responsibilities were assigned to a younger man, that the plaintiff's supervisor refused to speak with him, that the supervisor acknowledged that such silence was an indication that the plaintiff's job was in trouble, and that one of plaintiff's managers referred to him as old and even prepared and posted a sign stating that the plaintiff was old.  Most significantly, the plaintiff, who formerly held an executive managerial position in the company, was transferred to a warehouse where his primary duties were to sweep and clean up after the employees in the warehouse cafeteria.  We held that, *except for* the employer's extremely "painful and embarrassing" "steep downhill push" of the plaintiff to demeaning and degrading job duties, the employer's conduct was within the realm of an ordinary employment dispute and was not so extreme and outrageous as to support an intentional infliction of emotional distress claim.[37]

After examining the facts of the instant case—viewed most favorably to Burden—we find that his post-reclassification assignments do not even approximate the extremely humiliating shift in duties and working conditions experienced by the plaintiff in *Wilson.*  Although Burden alleges that the reclassification resulted in his performing "menial" assignments, his own testimony indicates that he was given assignments involving coordinating projects,

---

[37]*See id.* at 1144-46.

14

reviewing budgets, and reviewing and compiling evaluations of proposed company "Standard Practices." He also testified in his deposition that he was appointed by Davis to serve as Vice Chair of the Proposal Council, which reviewed the proposal process by obtaining input from the company's different functional departments. Moreover, Burden was given an office that was comparable to his former office, albeit slightly smaller, and was allowed to retain his parking space as well as his former earnings level, which had increased by $16,500 in July 1992, just a month before his reclassification. Unlike the demeaning and degrading change to visually apparent janitorial duties in *Wilson,* the changes in Burden's employment were non-apparent to the casual observer and were significantly more subtle in quality.

Burden also testified that he received a nasty anonymous letter, which stated negative reasons why Burden should "get out of there." Although preparation and delivery of this letter is the only fact contained in Burden's testimony that could even arguably reflect extreme or outrageous conduct, the letter was anonymous and no record evidence indicates that either Riney or Davis sent it. Moreover, according to Burden's own testimony, when he informed Davis that he had received the letter, Davis volunteered to refer the matter to "Security" and stated that the sender, if identified, would be discharged. We are not persuaded that Burden has any possibility of recovery in a Texas court on the basis of that anonymous letter alone.

Neither are we swayed by Burden's argument that, because only

15

a few Texas cases deal with a claim of intentional infliction of emotional distress, the district court erred in speculating what a Texas court would do. The tort of intentional infliction of emotional distress was explicitly recognized in *Twyman v. Twyman*[38], a 1993 case. The Texas cases that have applied the four-part test enunciated in *Twyman* have been consistent in using the stringent "extreme and outrageous" element of the claim.

Here the district court properly relied on those Texas cases to guide its reasoning. Given the utter lack of record evidence of any conduct explicitly attributable to Riney or Davis that could meet the established criteria for a claim of intentional infliction of emotional distress, we conclude that the district court did not err in determining that those two defendants were fraudulently joined.

In sum, we are satisfied that no reasonable jury in Texas could find that the conduct of Riney and Davis in changing Burden's duties after reclassification constituted extreme and outrageous conduct. Even though the determination whether a valid intentional infliction of emotional distress claim exists necessarily depends on the facts of each case, we conclude that, as a matter of law, the facts portrayed by the pleadings, affidavits, and deposition testimony in the instant case do not reveal any conduct that "go[es] beyond all possible bounds of decency, and [that could] be regarded as atrocious [ ] and utterly intolerable in a civilized

---

[38]855 S.W.2d 619 (Tex.1993).

16

community."[39]

Burden nevertheless contends that if he had been given more discovery time he could have established additional facts that would tend to demonstrate the true, non-pretextual reasons behind the defendants' conduct. In his response to the defendants' motion for summary judgment, Burden alternatively requested the district court to grant a continuance of the hearing on the motion so that he could have more time for discovery. The court ruled on the summary judgment motion without granting a continuance. As Burden himself asserts, however, additional time for discovery would have aided him only in determining whether Riney and Davis acted intentionally or recklessly. Nothing in Burden's argument suggests that more time for discovery would have produced a cure for his failure to meet the second prong for a valid claim of intentional infliction of emotional distress—that the defendant's conduct was extreme and outrageous—regardless of whether it was intentional or reckless. We therefore find that the district court did not abuse its discretion in failing to delay its consideration of the defendant's summary judgment motion.[40]

---

[39]*See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993) (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)).

[40]*See Cormier v. Pennzoil,* 969 F.2d 1559, 1561 (5th Cir.1992) ("plaintiff's entitlement to discovery prior to a ruling on a summary judgment motion may be cut off when, within the trial court's discretion, the record indicates that further discovery will not likely produce facts necessary to defeat the motion"); *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285-86 (5th Cir.1990) (court did not abuse its discretion in denying request for continuance because party opposing summary judgment motion did not demonstrate how additional time would enable him to rebut movant's allegations that no genuine issue of fact

17

Texas courts have held that, as a matter of law, the fact of termination alone cannot constitute outrageous behavior; rather, the "extreme and outrageous" element focuses only on the *manner* of termination.[41] Here, Burden's employment with General Dynamics was not terminated; yet Burden alleges—analogous to constructive termination—that the actions of Riney and Davis in reclassifying him directly resulted in his voluntary retirement from the company. But, as we have previously noted, Burden's pleadings, affidavits, and deposition testimony do not contain evidence or allegations of conduct by Riney and Davis, in reclassifying Burden's job, that a Texas court could possibly deem to be extreme and outrageous.

In conclusion, we agree with the district court's determination that there is no basis for believing that Burden could recover from Riney and Davis in a Texas court and that, therefore, they were fraudulently joined to defeat diversity jurisdiction.[42]

---

existed for trial).

[41]*See Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993); *Coté v. Rivera,* 894 S.W.2d 536, 542 (Tex.App.—Austin 1995, n.w.h.); *Shaheen v. Motion Indus., Inc.,* 880 S.W.2d 88, 92 (Tex.App.—Corpus Christi 1994, writ denied) (terminated employee's allegation that employer's motivation was outrageous, but that manner of discharge was not, was insufficient to support intentional infliction of emotional distress claim).

[42]In light of our disposition of the fraudulent joinder issue, we need not, and therefore do not, address the contention of Riney and Davis that even if they were not fraudulently joined, the district court properly exercised its jurisdiction over the case under 28 U.S.C. § 1441(c) because Burden's intentional infliction of emotional distress claims against Riney and Davis were separate from and independent of Burden's claim under the Act against General Dynamics.

C. SUMMARY JUDGMENT

Given our conclusion that Burden fraudulently joined Riney and Davis to defeat diversity, it follows that the district court had subject matter jurisdiction to consider and grant the Defendants-Appellees' summary judgment motion, which ruling Burden also appeals. And our analysis of the fraudulent joinder issue presages our *de novo* consideration of summary judgment here.[43] Looking at the summary judgment evidence in the light most favorable to Burden, we see that he has not raised any genuine issue of material fact for trial. As we noted in connection with fraudulent joinder, nothing in the pleadings or other evidentiary material indicates that the conduct of Riney and Davis rose to the level of extreme and outrageous conduct.[44] Burden's allegations against those two, therefore, when viewed in the light most favorable to Burden, do not create a genuine issue of material fact related to his claims against them for intentional infliction of emotional distress. Accordingly, we affirm the district court's summary judgment of dismissal as to such claims against Riney and Davis.

III

---

[43]*See Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98, 102 (5th Cir.1990) ("Summary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery"), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

[44]We have previously observed that the standard of review for a fraudulent joinder claim is similar to that used for ruling on a motion for summary judgment. *See B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 n. 9 (5th Cir. Unit A Dec. 10, 1981).

19

CONCLUSION

Having viewed all questions of substantive fact in the light most favorable to Burden and having taken all of Burden's allegations to be true, we nevertheless conclude that there is no possibility that a Texas court would recognize a valid cause of action in Burden's claims against Riney and Davis for intentional infliction of emotional distress. Therefore, as a matter of law, Riney and Davis were fraudulently joined, a conclusion that effectively vests the district court with subject matter jurisdiction, by virtue of diversity, to rule on the summary judgment motion of Riney and Davis.

Moreover, the summary judgment evidence demonstrates that, as a matter of law, Riney and Davis are entitled to have Burden's claims against them dismissed on summary judgment. The "extreme and outrageous" element needed for Burden's intentional infliction of emotional distress claims lacks factual support, and no material disputes of fact exist relating to Burden's claims against those two defendants. Thus the district court's orders denying Burden's motion to remand to the state court and granting summary judgment dismissing Burden's intentional infliction of emotional distress claims against Riney and Davis are AFFIRMED.