IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 97-20179 & 97-20610

_____

LUPE VALDES,

Plaintiff-Appellant,

versus

WAL-MART STORES, INC.;
TERRY WILLIAM; PETSMART INCORPORATED,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Southern District of Texas, Houston

(H-94-CV-1388)

_____

September 4, 1998

Before GARWOOD, JONES and WIENER, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Lupe Valdes (Valdes) appeals the district court's grant of summary judgment in favor of defendant-appellee Wal-Mart, Inc. (Wal-Mart), contending that the district court erred in denying her motion to remand the case to state court and in subsequently granting summary judgment in favor of Wal-Mart.

_____

[*] Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Valdes also appeals the district court's denial of her motion to vacate the judgment in favor of Wal-Mart.[1]  We reverse and remand.

### Facts and Proceedings Below

On the afternoon of August 2, 1993, Valdes parked her car in the parking lot of a Wal-Mart store located in Humble, Texas, intending to shop there.  She went shopping in the Wal-Mart store and then, when in the store's parking lot returning to her car, was confronted by a sixteen-year-old male—not a Wal-Mart employee or customer—brandishing a knife.  After forcing Valdes into her car, the abductor ordered her to drive to the rear of a nearby shopping mall.  Once there, Valdes' abductor directed her to park the car behind a Petsmart store, where they would be partially hidden from sight by several trash dumpsters.  He then raped her and fled.

On February 24, 1994, Valdes brought this suit in Texas state court, alleging that Wal-Mart had breached the Texas law duty of care it owed to its customers, and specifically to her, by negligently failing to provide adequate security in its parking lot, taking little or no action to implement security measures despite its awareness that a number of crimes had occurred in the lot.  In addition to Wal-Mart, Valdes named as defendants Terry Williams, the general manager of the store from which she was abducted, and Petsmart, Inc., the business on whose property the

---

[1]    Valdes' appeal of the district court's denial of her motion to vacate was originally filed as a separate appeal, but her two appeals were subsequently consolidated.

2

rape occurred. As to Petsmart, Valdes claimed that the area behind the store was hidden from public view and not adequately monitored by employees or security guards, thus constituting an unreasonably dangerous condition.

With regard to Williams, Valdes alleged that, by virtue of his position as general manager, he owed a separate Texas law duty to store patrons to exercise ordinary care in recognizing, and in taking steps to remedy, those situations and conditions on the store premises—including the parking lot—that posed an unreasonable risk of harm to customers. Valdes further asserted that, although he had been aware that a number of crimes had been committed in the Wal-Mart parking lot, Williams had failed to take any action either to warn or to provide adequate security for store patrons.

Neither Wal-Mart nor Petsmart is or was a citizen of Texas, each being a citizen of another state; both Williams and Valdes are and were citizens of Texas.

On April 22, 1994, defendants removed the case to federal court pursuant to 28 U.S.C. § 1441(b), alleging diversity of citizenship and that Williams had been fraudulently joined as a defendant "solely for the purpose of defeating diversity jurisdiction" and that Valdes' original petition contained "no allegations" that "would result in personal liability of Mr. Williams." In reply, on May 13, 1994, Valdes moved to remand, arguing that she had stated a valid cause of action against

3

Williams, that he was a proper defendant in the suit, and therefore that the federal district court lacked diversity jurisdiction over the case. Williams subsequently also filed a formal motion under Fed. R. Civ. P. 12(b)(6) to be dismissed as a defendant, again asserting, in a somewhat brief and conclusory manner, that no viable cause of action had been pleaded against him. Valdes replied with a memorandum of law citing *S.H. Kress & Co. v. Selph*, 250 S.W.2d 883 (Tex. Civ. App.--Beaumont 1952, writ ref'd n.r.e.), for the proposition that "[a] store manager in Texas does have a duty to take steps to inspect and make the premises safe, and can be held liable for harm caused to others by his failure to exercise reasonable care." Valdes also relied on *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex. 1984), as establishing that joint and several liability may be imposed on an employee who commits or participates in committing a tort in the course of his employment.

Petsmart filed a motion for summary judgement, contending that because Valdes had technically been a trespasser, albeit an unwilling one, Petsmart did not owe her a duty of due care under Texas law and was therefore entitled to summary judgment.

On August 26, 1994, the district court ruled on all three motions, denying Valdes' motion to remand, granting the motion to dismiss Williams, and granting Petsmart's motion for summary judgment. Williams was thus then dismissed from the case. Valdes

4

subsequently attempted to appeal the district court's ruling, but this Court, on November 17, 1994, dismissed the appeal for lack of jurisdiction. Valdes also requested that the district court certify its order for interlocutory appeal, which the district court declined to do.

On March 15, 1995, Wal-Mart, the only remaining defendant, filed its first and only motion for summary judgment. On January 30, 1997, the district court granted summary judgment in favor of Wal-Mart. Valdes filed notice of appeal from this final judgment on February 28, 1997, challenging the grant of the motion to dismiss Williams, the denial of her motion to remand, and the grant of summary judgment in favor of Wal-Mart.[2]

On May 23, 1997, Valdes moved to vacate under Rule 60, alleging that Wal-Mart had failed to produce internal memos regarding safety in parking lots. The district court denied Valdes' Rule 60 motion on July 19, 1997. Contending that the district court abused its discretion in refusing to vacate the judgment, Valdes filed a second notice of appeal.[3] The two appeals have been consolidated before this Court.

## Discussion

On appeal, Valdes, among other things, reasserts her contention that removal was improper due to lack of complete

---

[2]   This first appeal was docketed under case number 97-20179.

[3]   Valdes' second appeal was docketed under case number 97-20610.

5

diversity, in that she and Williams were each Texas citizens and Williams was not fraudulently joined, and consequently that the district court lacked subject matter jurisdiction over this case and erred in overruling her motion to remand. In response, Wal-Mart argues that, pursuant to the doctrine of "fraudulent joinder," the district court properly excluded Williams from consideration for purposes of determining complete diversity, and, accordingly, did not err in denying Valdes' motion to remand.

The denial of a motion to remand an action removed from state to federal court is a question of federal subject matter jurisdiction, which we review *de novo*. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (1995). As the party invoking federal jurisdiction in this case, Wal-Mart bears the burden of demonstrating that the case is properly before the federal tribunal. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996); *Carpenter v. Wichita Falls Indep. School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Additionally, because removal was premised on an allegation of "fraudulent joinder," Wal-Mart bears the particularly "heavy burden" of establishing either outright fraud in Valdes' recitation of jurisdictional facts or that there is no reasonable possibility of establishing the liability of, or recovering from, the nondiverse defendant. *Burden*, 60 F.3d at 217; *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981); *Parks v. New York*

6

*Times Co.*, 308 F.2d 474, 477 (5th Cir. 1962).

I.  Fraudulent Joinder Analysis

   A. Analytical Framework

   An allegation of fraudulent joinder raises the "single threshold question" of jurisdiction. *B., Inc.*, 663 F.2d at 548. Consequently, "[u]nlike the parties who joust for victory on who wins or loses our sole concern is:  Who tries the case? State or Federal Court?" *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 175 (5th Cir. 1968).  "In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B., Inc.*, 663 F.2d at 549 (footnote and internal citations omitted).  *See also Sid Richardson*, 99 F.3d at 751.   (The case *sub judice* involves the former of these two alternatives.)[4]

   "We have consistently held that claims of fraudulent joinder should be resolved by a summary judgment-like procedure whenever possible." *Sid Richardson*, 99 F.3d at 751.  *See also B., Inc.*, 663 F.2d at 549 n.9; *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98,

---

[4]   As there has been no allegation of "outright fraud" in the case *sub judice*, Wal-Mart must prove that there is no possibility Valdes could establish a cause of action in state court against Williams.

7

100 (5th Cir. 1990). This summary determination "does not anticipate a judgment on the merits, but merely considers whether there is *any possibility* that the plaintiff might prevail." *Sid Richardson*, 99 F.3d at 751 (emphasis added). In conducting this analysis, the district court must "evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." *B., Inc.*, 663 F.2d at 549 (citations omitted). Next, the district court must ascertain the applicable substantive law, "resolv[ing] any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.* (citations omitted). *See also Parks v. New York Times Co.*, 308 F.2d 474, 479-80 (5th Cir. 1962) ("We need only decide whether there was a reasonable basis in law and fact for such a contention in the state court suits."). Finally, the court must determine whether there is "'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) (quoting *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968)).

If, at the end of this inquiry, the district court "should find that there is no possibility of a valid cause of action being set forth against the in-state [defendant], only then can it be said that there has been a 'fraudulent joinder.'" *B., Inc.*, 663 F.2d at 550. Conversely, "[i]f there is any possibility that the

8

plaintiff has stated a cause of action against any non-diverse defendant, the federal court must conclude that joinder is proper, thereby defeating complete diversity, and the case must be remanded." *Sid Richardson*, 99 F.3d at 751 (citing *Burden*, 60 F.3d at 216; and *B., Inc.*, 663 F.2d at 550).

B.  Valdes' Claim

Texas recognizes a cause of action based on the failure of a land owner or occupier to exercise reasonable care to protect individuals coming onto the premises against intentional injuries caused by third persons if the land owner or occupier has reason to know that such acts are likely to occur there, either generally or at some particular time. *See, e.g., Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985).  Claims under such a cause of action are evaluated using a basic negligence analysis, requiring the showing of duty, breach, and causation. *Id.* at 549-551.

Valdes contends that "[u]nder Texas law, a local store manager of a national chain can be held liable for harm caused to invitees by [such manager's] failure to exercise reasonable care."

Whether Valdes has pleaded a fraudulent claim against Williams turns largely on whether there is no reasonable possibility under Texas law that Williams, by virtue of his position as store manager, owed Valdes a duty of care which, if breached, could give rise to personal liability.  In arguing that Williams did owe her

9

such a duty, Valdes relies principally on a single forty-five-year-old case, *S.H. Kress & Co. v. Selph*, 250 S.W.2d 883 (Tex. Civ. App.--Beaumont 1952, writ ref'd n.r.e.), which held that a general store manager owed an independent duty of care toward business invitees based on his right, as manager of the store, to exercise control over the premises.  Wal-Mart replies that recent cases indicate the Texas Supreme Court would not hold *Selph* to be good law and that *Selph* is essentially limited to its facts and has "little or no" applicability to the case at bar.

In *Selph*, a store patron who had sustained injuries when she slipped on a piece of candy and fell to the floor brought suit against both the company that owned the store and a Mr. H. Howe, the store's general manager.  In the court of appeals, it was specifically argued that under Texas law Howe did not owe a duty of care to business invitees based on his position as manager of the store.  250 S.W.2d at 891.  The court of appeals rejected this argument, holding that, by virtue of the control that he exercised as manager of the store, Howe had a partially nondelegable duty of due care, separate from that of the owner, toward business invitees.[5]  Concluding that Howe was the "custodian" of the

---

[5]    *Id.* at 893.  In reaching this holding, the court relied on cases from other jurisdictions as well as section 355 of the *Restatement (First) of Agency*, which states the view that:

> "An agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or

premises, and that he had both charge and control of the store, the court held that Howe personally owed business invitees a separate duty of due care and consequently that he could be held individually liable for negligently *failing* to remedy a condition on the store premises that he knew or should have known posed an unreasonable risk to store patrons. *Id.* at 893-94.

Valdes argues that the holding in *Selph* is directly applicable to the case *sub judice*, claiming that the facts of *Selph* closely parallel those of the case at bar. It is uncontested that Williams was the general manager of the Wal-Mart from the parking lot of which Valdes was abducted, and Valdes has alleged that Williams had reason to know that criminal activity on the Wal-Mart premises posed an unreasonable risk to business invitees. Valdes thus contends that *Selph* establishes that, as store manager, Williams owed her a duty of due care requiring him to remedy or repair any unreasonably dangerous conditions on the premises of which he knew or should have known, and that he breached this duty by not taking steps to provide adequate security in the parking lot.

Wal-Mart strongly disagrees, arguing that *Selph* is inapplicable to the facts of this case and, in all likelihood, is no longer good law. Wal-Mart asserts that *Selph* is a simple "slip

chattels of others is subject to liability for such harm caused during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take."

11

and fall" case and "speaks [only] to the duties of a store manager with regard to that which he or she could reasonably expect to encounter in the course of day-to-day operations, namely foreign substances on the floor," and consequently is entirely inapplicable to the facts of the case at bar.[6]  Neither the holding nor the

---

[6]     In asserting both that *Selph* is no longer good law and that Williams did not owe Valdes an individual duty of care, Wal-Mart relies on *Leitch v. Hornsby*, 935 S.W.2d 114 (Tex. 1996); *Centeq Realty Inc. v. Siegler*, 899 S.W.2d 195 (Tex. 1995); *Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995), and *Natividad v. Alexis, Inc.*, 875 S.W.2d 695 (Tex. 1994).

If read broadly, the principles of *Leitch* might well undermine *Selph*.  It is unclear why Williams personally would not owe a duty to Valdes if she had been a Wal-Mart employee, but would owe such a duty to her as a Wal-Mart customer, though Wal-Mart itself would owe the duty—and presumably could not delegate it to Williams—in either case.  But *Leitch* was not a premises case and we cannot say with full confidence that it will be applied outside of the employer-employee context.  Nothing in it expressly reflects that it would be so extended.

As explained below, a Texas court of appeals has recently held that neither *Centeq* nor *Natividad* undermines the holding of *Self*.  We cannot say that that conclusion is so clearly wrong as to be unreasonable.

With regard to *Holloway*, the court declined to hold a corporate agent liable for tortious interference with contractual rights unless the plaintiff could show that "the alleged act of interference [was] performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." 898 S.W.2d at 796.  Thus, it is reasonably arguable that *Holloway* does not stand for the general proposition that an agent cannot be held liable for tortious conduct incident to his employment, but rather avoids "convert[ing] every [corporate] breach of contract claim into a tort claim" by holding that unless an agent is clearly acting in his personal capacity (and motivated solely by personal interest) he cannot be held liable in tort for causing a corporation to violate its contractual obligations.  *Id.* at 795.

reasoning of *Selph* clearly mandates such a limitation.[7]

We are aided in assessing the continuing validity of *Selph,* and guided in our assessment of whether there is a reasonable possibility that Texas courts would view the law as Valdes contends it is, by the decision of a Texas court of appeals in a premises liability case presenting issues similar to those in the case *sub judice*. In *Wal-Mart Stores, Inc. v. Deggs*, 971 S.W.2d 72 (Tex. App.--Beaumont 1996), *rev'd on other grounds*, 968 S.W.2d 354 (Tex. 1998), the court of appeals cited *Selph* as good law, stating that as "general manager, we know of no reason why [defendant] should not be considered as the operator of the premises in question." 971 S.W.2d at 75. The court went on to hold that the Sam's Wholesale Club store manager, "as the operator of the premises in question, had the duty to maintain the premises in a condition that would not pose an unreasonable risk of harm." *Id.* (citations omitted). As *Selph* has never been explicitly overruled, and considering that a Texas court of appeals has recently cited it as precedent for the proposition in question, we cannot agree with Wal-Mart's assertion that there is no reasonable possibility that

---

[7] In discussing section 355 of the *Restatement (First) of Agency*, the court appeared to equate the scope of the agent's duty with that of the owner's, being limited only to the extent that the agent lacked full control over the premises. *See Selph*, 250 S.W.2d at 893 ("'One who is in complete control over either land or chattels is under the same duty to protect others from the condition of such things as is the possessor of land or chattels.'") (citation omitted).

13

*Selph* would be considered valid law by Texas courts.[8]  Thus, we hold that Valdes' allegation that Williams, by virtue of his position as store manager, had a duty to maintain the premises in a condition that would not pose an unreasonable risk of harm to business invitees is sufficient to demonstrate a reasonable possibility that a Texas court would recognize this duty.

We are left with the issues of breach and proximate cause. Valdes alleged that Williams knew or should have known about various crimes that had been committed in the Wal-Mart parking lot, thus putting him on notice of an unreasonably dangerous situation on the premises, and that he negligently had failed to take measures to minimize the risk to customers which a similarly situated reasonable retail store manager would have taken, including failing to have adequate security personnel and/or patrols and other security measures.  Valdes also alleged that such minimal security precautions would have prevented her abduction. Viewing these allegations in the light most favorable to Valdes, "we cannot predict with absolute certainty that a Texas court would summarily dismiss the cause[] of action asserted against defendant [Williams]."  *B., Inc.*, 663 F.2d at 554.  We are unable to conclude

---

[8]    In *Deggs,* the court of appeals rejected Wal-Mart's arguments that *Centeq* and *Natividad* had undermined the holding in *Selph* regarding the manager's individual duty.  The *Deggs* court found *Natividad* "irrelevant to the question of whether the general manager of a store has a duty to the general public to maintain the store in a reasonably safe condition."  *Deggs*, 971 S.W.2d at 75. The *Deggs* court also found *Centeq* to be inapposite.  *Id.* at 75-76.

14

that there is no reasonable possibility that Valdes' allegations, if accepted as true, would be sufficient to state a valid Texas law cause of action. *See, e.g., Holder v. Mellon Mortgage Co.*, 954 S.W.2d 786 (Tex. App.--Houston 1997, writ pending); *Kendrick v. Allright Parking*, 846 S.W.2d 453 (Tex. App.--San Antonio 1992, writ denied); *Midkiff v. Hines*, 866 S.W.2d 328 (Tex. App.--Houston 1993, no writ).

## Conclusion

In sum, "having assumed all of the facts set forth by [Valdes] to be true and having resolved all uncertainties as to state substantive law against the defendants," *B., Inc.*, 663 F.2d at 550, we find that there is a reasonable possibility that Valdes has stated a valid Texas law cause of action against Williams. Accordingly, we hold that the district court erred in finding that Williams was fraudulently joined and consequently erred in denying Valdes' motion to remand this case to state court. This holding renders all other issues presented on appeal moot. We therefore reverse and remand with instructions that the district court remand this case to the state court from which it was removed.

REVERSED and REMANDED[9]

---

[9]    All pending motions are hereby DENIED.

15