Steve JAMISON, et al. Plaintiffs

v.

KERR–MCGEE CORPORATION,
et al. Defendants

3:01CV121BN

United States District Court,
S.D. Mississippi,
Jackson Division.

July 9, 2001.

Shirley C. Byers, Wilbur O. Colom, Colom Law Firm, Columbus, MS, Bennie L. Turner, Orlando R. Richmond, Sr., Turner & Associates, PLLC, West Point, MS, for plaintiffs.

John E. Milner, Christopher A. Shapley, William "Trey" E. Jones, III, Robert L. Gibbs, Brunini, Grantham, Grower & Hewes, Jackson, MS, for Kerr-McGee Corp., defendant.

John M. Johnson, Jackson R. Sharman, III, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, for Kerr McGee Chemical, L.L.C., Moss-American, Inc., T.J. Moss Tie Co., American Creosote, Inc., defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion to Remand by Plaintiffs, who contend that diversity of parties is incomplete, so that the Court lacks jurisdiction. Having considered the motion, the response by Defendants, and all supporting materials, the Court finds that the motion is well taken and should be granted.

### I. Facts and Proceedings

The present case is unusual in having been once removed to the Southern District already and remanded upon consent of the defendants, who have now removed to federal court a second time. In February 2000, Steve Jamison and numerous others ("the Plaintiffs") filed suit in the Circuit Court for the First Judicial District of Hinds County, Mississippi, against Kerr–McGee Chemical LLC ("KMC"), Sanderson Plumbing Corporation ("Sanderson"), Columbus Cemetery and Investment Company ("Columbus Cemetery"), the Mississippi Department of Environ-

mental Quality ("MDEQ"), and others— collectively, "the Defendants." KMC is a Delaware corporation with its principal place of business in Oklahoma, whereas the other defendants listed above are domiciled in Mississippi. The Plaintiffs claimed to have suffered assorted harms due to the alleged runoff of hazardous chemicals from a KMC site in Columbus, Mississippi, onto and through adjoining properties held by other defendants, whom the Plaintiffs alleged were negligent in not seeking to counter or halt the encroaching flood of chemicals.

KMC and the other defendants removed the case to the Southern District soon thereafter, and opposed the consequent motion for remand on the grounds that the Plaintiffs had fraudulently joined in-state defendants to destroy diversity. Before the court could rule on the motion to remand, however, KMC and the other defendants requested that the motion be granted.[1] KMC explained that while it had not abandoned its theory of fraudulent joinder, a recent order remanding still another companion case (*Maranatha Faith Center v. Kerr–McGee Corp.*, No. 3:00CV142BN), taken with the litigation of yet a fourth case in the Northern District (*Andrews v. Kerr–McGee Corp.*, 1:00CV158BA), left KMC and the other defendants with the costly prospect of duplicative litigation. The court (Wingate, J.) granted the motion, and the case was remanded to the Hinds County court.

Months later, KMC learned from the counsel for Sanderson that he had spoken with an attorney for the Plaintiffs who had disavowed any intent of ever serving Sanderson. Inquiries revealed that the other non-diverse defendants had not been served. Considering that its theory of fraudulent joinder had been vindicated, and presumably feeling more sanguine about the results of litigating in multiple courts, KMC led the other defendants in removing a second time to federal court, this time only a few days before the deadline imposed by 28 U.S.C. § 1446(b) (one year limit for removal on diversity grounds). The Plaintiffs naturally have sought remand, and it is this motion which is now before the Court.

## II. Analysis

■ The Defendants have the burden to demonstrate that federal jurisdiction exists and that removal is therefore proper. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995). In the present case, the Defendants allege fraudulent joinder and cite to the "other paper" provision allowing them to seek removal after having done so once before. The Plaintiffs contest both claims.

### A. "Other Paper"

■ Notice of removal must be filed within 30 days of receiving either the initial pleading or, if that pleading does not state a removable case, notice may be filed within 30 days of receiving "an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The final deadline for any removal based on diversity is one year after the action begins. *Id.* The defendants may seek a second removal after remand, provided it rests on different grounds. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir.1996). The same theory of federal jurisdiction may be pled in the second notice, provided only that different facts

---

1. The request and remand actually affected two cases, the present one and its close kin, *Spirit of Prayer Holiness Church v. Kerr–* *McGee Corp.*, No. 3:00CV238WS; both were remanded.

support it. *S.W.S.*, 72 F.3d at 493. "Other paper" for the purposes of § 1446(b) may include correspondence between the parties and their counsel or between counsel for the parties. *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). Also, "other paper" "must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Addo*, 230 F.3d at 762; *S.W.S.*, 72 F.3d at 494.

The "other paper" that the Defendants rely upon in this case consists of (1) a December 21, 2000, letter from counsel for Sanderson, stating that counsel for the Plaintiffs "does not intend to attempt to serve Sanderson"; (2) a January 23, 2001, e-mail message from MDEQ stating that it has not been served; (3) the February 15, 2001, affidavit of a paralegal for KMC's counsel, stating that the docket at the time of removal "reflected no proof of service" on Sanderson, Columbus Cemetery, or MDEQ; and (4) a February 14, 2001, letter from counsel for Columbus Cemetery confirming that it had not been served. The second notice of removal was filed on February 15, 2001.

The Plaintiffs argue that the paralegal's affidavit is excluded from being "other paper" by the holding that "an affidavit created by the defendant and based on the defendant's subjective knowledge" will not open the 30–day window of removal opportunity. *S.W.S.*, 72 F.3d at 494. However, that general holding rested on the United States Court of Appeals for the Fifth Circuit's earlier holding that the period of removability was not commenced by a defendant's subjective awareness that a complaint, naming certain harms to the plaintiff without seeking a determinate amount of damages, would likely meet the diversity amount-in-controversy requirements. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir.1992). By comparison, an affidavit reporting the objective fact that no return of service has been recorded does not seem "subjective."

■ Besides, the Defendants have also offered the correspondence with counsel for the non-KMC defendants, indicating the absence of service and the alleged intent of the Plaintiffs not to pursue service in the case of Sanderson. Under *Addo*, this evidence would appear to constitute "other paper," provided that it indicates the "voluntary act" of the Plaintiffs. The Motion to Remand may mean to address this issue when it laconically asserts that, even if the Plaintiffs' claims against the non-KMC defendants had been dismissed for failure to serve process, "removal is improper based upon the 'voluntary-involuntary' rule."[2] While the metaphysical question of when a non-action amounts to an action is a notoriously vexed one, the Court finds that non-service of defendants almost a year after the suit is filed constitutes a voluntary act for the purposes of the "other paper" provision.[3]

The Court therefore holds that the Defendants had opportunity to seek removal based on the "other paper" which set forth new facts in the case.

**2.** No authority is cited for this supposed "rule" in the motion, and the Plaintiffs did not submit a memorandum or brief in support of the motion.

**3.** The Defendants also mount an argument against an objection that the Plaintiffs did not appear to make, defending the filing on February 15 as within 30 days of proof that the last non-diverse defendant whose service status was uncertain, Columbus Cemetery, had not been served. The Court accepts this reasoning.

## B. Fraudulent Joinder

 Having established that the Defendants are entitled to file for removal, the Court now examines their argument for federal jurisdiction, which depends on a showing of fraudulent joinder of non-diverse defendants. Proof of fraudulent joinder requires that the plaintiffs have either committed "outright fraud in the pleading of the jurisdictional facts" or filed a complaint which has "absolutely no possibility" of being successfully proved in state court. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir.1999) (citing *Burden v. General Dynamics Corp.,* 60 F.3d 213, 216–17 (5th Cir.1995); *Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 259 & 262 n. 13 (5th Cir.1995)). All contested factual questions and ambiguous or uncertain points of state law are to be resolved in the favor of the plaintiff. *Griggs,* 181 F.3d at 699 (citing *Burden,* 60 F.3d at 217–18; *Cavallini,* 44 F.3d at 259). In deciding a claim of fraudulent joinder, the court is not bound to the pleadings but may take other evidence into account. *Burden,* 60 F.3d at 217. The proceeding thus resembles summary judgment in what evidence the court may consider. *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 n. 9 (5th Cir.1981).

 The Defendants do not allege outright fraud in the pleadings, but rather that the Plaintiffs, by failing to serve the non-diverse defendants, have in effect voluntarily abandoned their claims, as shown by the "other paper" provided and the alleged statement of the Plaintiffs' counsel regarding Sanderson.[4] The problem with this argument is that the United States Supreme Court has held that "the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant." *Pullman Co. v. Jenkins,* 305 U.S. 534, 541, 59 S.Ct. 347, 83 L.Ed. 334 (1939). *See N.Y. Life Ins. Co. v. Deshotel,* 142 F.3d 873, 883 (5th Cir.1998):

> A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.

While *Jenkins* allows for the possibility of showing that the non-served, non-diverse defendant has been joined in bad faith, that showing involves the usual fraudulent-joinder analysis. *Jenkins,* 305 U.S. at 541, 59 S.Ct. 347.

The defendants contend that the failure to serve the non-diverse defendants displays the Plaintiffs' lack of any real intent to secure a judgment against them, so that those defendants were fraudulently joined. This "lack of intent" argument has an interesting pedigree. The defendants do not cite to Fifth Circuit cases for it, but rather to *Johnson v. Scimed, Inc.,* a case from the Middle District of Louisiana, and to

---

4. The strength of the latter evidence is uncertain, insofar as it (1) appears in a letter, not in a sworn affidavit, and (2) may be inadmissible hearsay (*but see* Fed.R.Evid. 803(3) (exception for declarant's statement of intent)).

Trying to bolster their facts, the Defendants also submit deposition testimony by the corporate representative of Columbus Cemetery, who firmly avers his belief that Columbus Cemetery ought not to be sued. Response to Plaintiffs' Motion to Remand, Exhibit F, pp. 59 & 61. How this "further reveals the fraudulent nature of the plaintiffs' claims," as opposed to exemplifying the common attitude of defendants everywhere, is unclear to this Court.

Wright, Miller and Cooper's treatise on federal procedure. *Scimed* itself cites to that treatise for the intent clause, so we may turn there.[5] *Johnson v. Scimed, Inc.,* 92 F.Supp.2d 587, 590 (E.D.La.2000).

■ For the proposition that fraudulent joinder exists where the plaintiff "does not intend to secure a judgment against that particular defendant," the treatise cites the Supreme Court's holding in a 1913 opinion by Justice Holmes, *Chicago, Rock Island & Pacific Railway Co. v. Schwyhart.*[6] 14B C. Wright, A. Miller and E. Cooper, *Federal Practice & Procedure: Jurisdiction 3d,* § 3723, at 636 & n. 84. The Court stated that "we have not to consider more than whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it shown as the record stood when the removal was denied." *Schwyhart,* 227 U.S. 184, 194, 33 S.Ct. 250, 57 L.Ed. 473 (1913). This language seems broader than the Fifth Circuit test cited above—whether any possibility of a successful suit exists on the facts (as the plaintiff pleads them) and the law—and it might seem that the Defendants have Supreme Court precedent for amending that test. However, the Fifth Circuit long ago noticed and interpreted *Schwyhart:*

> we take the rule to be that there can be no fraudulent joinder unless it be clear that there *can be no recovery under the*

*law* of the state on the cause alleged, *or on the facts* in view of the law as they exist when the petition to remand is heard. *One or the other at least would be required before it could be said that there was no real intention to get a joint judgment,* and that there was no colorable ground for so claiming.

*Parks v. N.Y. Times Co.,* 308 F.2d 474, 478 (5th Cir.1962), *cert. denied,* 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964) (emphasis added). *See B., Inc.,* 663 F.2d at 549 (citing *Parks* for fraudulent joinder test of "no possibility" cause could succeed). The rule in the Fifth Circuit, then, is that lack of intent to secure a judgment is demonstrable only by the impossibility of maintaining a cause of action in state court, such lack of intent is not the subject of a separate test for fraudulent joinder.[7]

■ The Defendants do not claim that the Plaintiffs have no colorable cause of action under Mississippi law, so they have made no case for fraudulent joinder. It is true that the Plaintiffs' behavior looks questionable, and that the Supreme Court has announced the importance of denying joinder where fraudulent:

> While the plaintiff, *in good faith,* may proceed in the state courts upon a cause of action which he alleges to be joint, it is equally true that the Federal courts should not sanction devices intended to prevent a removal to a Federal court

---

5. A Westlaw search suggests that eleven United States District Courts (but no circuits) have quoted the relevant language from Wright, Miller, and Cooper, and that five of them are in Louisiana.

6. The only other authority cited above the district-court level is the Eighth Circuit. *See Bolstad v. Central Sur. & Ins. Corp.,* 168 F.2d 927, 930 (8th Cir.1948) (quoting *Schwyhart*).

7. The earliest of the Eastern District of Louisiana opinions to cite the "lack of intent" element from Wright, Miller and Cooper, *Doe v.*

*Cutter,* 774 F.Supp. 1001, 1003 (E.D.La.1991), also cited a Supreme Court opinion that found joinder fraudulent when made "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the coemployee." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 98, 42 S.Ct. 35, 66 L.Ed. 144 (1921) (citing *Schwyhart*). However, in citing to *Wilson,* the Fifth Circuit has stated the *Parks* test. *Bobby Jones Garden Apts., Inc. v. Suleski,* 391 F.2d 172, 178 (5th Cir.1968). Thus, *Wilson* supports no distinct "lack of intent" test in the Fifth Circuit.

where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.

*Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186, 27 S.Ct. 184, 51 L.Ed. 430 (1907) (emphasis added) (*quoted in Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181, 183 (5th Cir.1990)) (emphasis added). However, this Court is bound to follow the test for "good faith" laid down by the Fifth Circuit, and it has done so here.

Although a reasonable argument might be made that to allow the joinder of a non-diverse defendant with the intent never to serve process on that defendant would permit the plaintiff to perpetrate a fraud upon the court, this scenario is recognized as a valid method of defeating federal jurisdiction:

> A plaintiff with the motive of defeating removal ... may be able to join as a defendant, in a case in which there is genuine diversity between the plaintiff and the other defendants, someone of nondiverse citizenship whom the plaintiff *does not really intend to sue* but who is arguably liable on the claim and hence properly joined under state law. The plaintiff can then just wait a year and drop that party ... dissolving the threat of federal jurisdiction.
>
> The one-year cutoff therefore has an anti-diversity ring to it. Congress acknowledged this, but called it a "modest curtailment."

David D. Siegel, *Commentary on 1988 Revision of Section 1446*, 28 U.S.C.A. § 1446 at 316–17 (West 1994) (emphasis added). Under the circumstances, diverse defendants are not without options. They can rely on the case management procedures of the state court system to force the plaintiff to serve or dismiss the non-diverse defendants (obviously not a solution available to the diverse defendant in the present case), or they can, upon the failure to serve the non-diverse defendants, seek dismissals under Rule 4(h) of the Mississippi Rules of Civil Procedure (120 days allotted for service after filing complaint). The Court notes that, although the present Defendants could thus have sought to dismiss the non-diverse defendants eight months before the removal deadline expired, they did not do so.[8]

## III. Conclusion

For the reasons stated above, the Court finds that the Motion to Remand is well taken and should be granted. Whatever the motive of the Plaintiffs in having failed to serve the non-diverse plaintiffs yet, no showing of fraudulent joinder has been proved.

IT IS THEREFORE ORDERED that the Motion to Remand [11–1] is hereby granted, and the present case remanded to the Circuit Court for the First Judicial District of Hinds County, Mississippi.

---

8. The fact that the non-diverse defendants are dismissible will not serve to meet the legal impossibility test for fraudulent joinder; there must be no chance of success, and Mississippi allows good cause shown to defeat a dismissal. Miss. R. Civ. P. 4(h); *Watters v. Stripling*, 675 So.2d 1242, 1243 (Miss.1996).